MARIO MERCADO E HIJOS, peticionario, v. TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE EXPROPIACIONES; HONORABLE PEDRO SANTOS BORGES, JUEZ, demandado.

Número: 2867.  Resuelto: 4 de mayo de 1962

*Charles R. Cuprill* y *Pedro M. Porrata*, abogados del peticionario; *J. B. Fernández Badillo, Procurador General* y *Rodolfo Cruz Contreras, Procurador General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

A requerimiento de la Compañía de Fomento Industrial de Puerto Rico, se instruyó en 9 de septiembre de 1959 un procedimiento de expropiación forzosa contra la sociedad Mario Mercado e Hijos y otros a los fines de adquirir una parcela de 70.8397 cuerdas de terreno sita en el barrio Canas, de Ponce, para destinarla a fines industriales. Dos días más tarde se dictó una resolución decretando la entrega material de la parcela e invistiendo el título absoluto de dominio sobre la misma a favor del Estado Libre Asociado de Puerto Rico.

La parte demandada solicitó se dejara sin efecto la orden sobre entrega material de la parcela expropiada, aduciendo, en síntesis, los siguientes fundamentos: 1—la expropiación no constituye un uso público; 2—el ejercicio del poder de expropiar para privar a una industria establecida de su fuente de materia prima para luego entregar dichos terrenos a entidades privadas para la operación de establecimientos industriales es ilegal e inconstitucional; y, 3—la determinación hecha en la selección de los terrenos es arbitraria y perjudicial tanto a los intereses del dueño, como a la comunidad en general. Después de celebrar una vista durante la cual se adujo prueba documental y oral, el tribunal, mediante resolución de fecha 23 de marzo de 1960 declaró sin lugar esta moción. Interpuesto recurso de apelación lo desestimamos en 6 de junio del mismo año. *Estado Libre Asociado de Puerto Rico* v. *Mario Mercado e Hijos,* apelación núm. 12800. En la

contestación presentada se reprodujo como defensa especial la relativa a la selección de los terrenos expropiados, y en una contestación enmendada específicamente se alegó que la expropiación era arbitraria, caprichosa, irrazonable e irracional; privándosele, por tanto, de su propiedad sin el debido proceso de ley.

La demandada notificó al Estado un pliego de interrogatorios que requería la siguiente información:

"1. Diga el nombre del perito o peritos usados en la valoración de los terrenos envueltos en este caso.

"2. Diga el nombre de las personas que participaron en la selección de los terrenos en este caso.

"3. Diga el procedimiento utilizado en este caso para la selección de los terrenos expropiados y qué base se utilizó para determinar su utilidad pública.

"4. Diga si al Demandante no se le ofrecieron antes de la expropiación otros terrenos en la misma finca no sembrados de caña.

"5. ¿Qué factores se utilizaron para llegar a la conclusión de que los terrenos expropiados eran mejores?

"6. Diga cómo llegó el demandante a la conclusión de que el terreno expropiado vale $125,455.90 y qué elementos o factores se utilizaron.

"7. Suministre copia del informe de los tasadores en este caso.

"8. Suministre copia de ventas o transacciones utilizadas para llegar a esa conclusión y diga cuáles piensa utilizar en el caso.

"9. Diga si el demandante al expropiar tomó en consideración el impacto sobre la Central Rufina y la industria azucarera en general al expropiar 70 cuerdas de terrenos sembrados de caña.

"10. Diga si al hacerse la selección de los terrenos se consultó al Departamento de Agricultura de P. R. y si se hizo, cuál fue la respuesta.

"11. ¿Cómo explica el demandante que mientras la Legislatura de Puerto Rico gasta millones de dólares como incentivo para la siembra de cañas por otro lado el demandante despoja a un agricultor de 70 cuerdas de caña con una producción de aproximadamente 3,000 toneladas de caña?

"12. Suministre una lista de los prospuestos [sic] industriales que piensa establecer el demandante en el terreno expropiado y la clase de actividad a que se dedicarán, indicando el número de trabajadores a utilizarse, nómina anual y materiales a utilizarse.

"13. Diga si se hicieron pruebas de terreno y en qué sitios. Suministre copia del informe.

"14. Suministre copia del informe de la Junta de Planificación aprobando la adquisición de los terrenos.

"15. Suministre copia del requerimiento a que se refiere el párrafo 1ro. de la demanda.

"16. Diga si los terrenos expropiados están adyacentes y colindantes con una carretera de primer orden.

"17. Diga si en ese sitio hay facilidades de luz eléctrica, fuerza motriz y teléfono.

"18. Diga la distancia de los terrenos expropiados de la Urbanización San Antonio; de la Urbanización Grillasca, del Parque Atlético Montaner, de la Escuela Superior de Dr. Pila, de la Escuela Vocacional, de la Avenida Hostos.

"19. Diga si el terreno expropiado es llano o no."

La parte demandante suministró la información sobre el nombre del perito tasador utilizado para la valoración del terreno (interrogatorio 1), los factores que se utilizaron para verificar la tasación (interrogatorio 6), la relación de ventas similares consideradas para la valoración (interrogatorio 8) y la topografía del terreno (interrogatorio 19). Objetó los restantes por los siguientes fundamentos: en cuanto a los interrogatorios 2 al 5, por haber sido resuelta idéntica cuestión—la impugnación de la selección de los terrenos—en dos ocasiones anteriores en forma contraria a las pretensiones de la sociedad demandada; en cuanto al interrogatorio 7, que requería copia del informe de tasación, por ser ello improcedente; en cuanto a los interrogatorios 9 al 12, por tratarse de materia irrelevante; y en cuanto a los restantes, por ser materia dentro del alcance y fácilmente accesible al proponente. (1) Estos reparos fueron declarados con lugar,

---

(1) En el alegato presentado ante este Tribunal, el interventor confiesa que el tribunal a quo cometió error al sostener las objeciones a los interrogatorios 16, 17 y 18 porque, aunque se trate de información dentro

y para revisar la actuación de la Sala de Expropiaciones expedimos auto de certiorari. ■

1. En *Martínez Rivera* v. *Tribunal Superior*, 85 D.P.R. 1 (1962) adoptamos como norma la de permitir—bajo ciertas condiciones—el descubrimiento de prueba pericial en casos de expropiación forzosa. Específicamente autorizamos que se permitiera la inspección o copia del informe del perito tasador cuando, como en el presente caso, no se autorizó la toma de su deposición. Respecto al interrogatorio número 7, erró, pues, el tribunal de instancia al sostener que era improcedente la entrega a la parte demandada de una copia del informe del tasador Feliú. Sin embargo, en la resolución que al efecto dicte, podrá imponer aquellas condiciones que salvaguarden las oportunidades que debe tener el Estado de prepararse adecuadamente para la vista del caso, especialmente si la demandada se dispone a utilizar luego el testimonio de peritos para impugnar dicho informe de tasación. ■

2. Los interrogatorios 2, 3, 4, 5, 9, 10, 11 y 12 se dirigen a obtener información para sostener la alegación de que la selección de los terrenos fue caprichosa y arbitraria. Aun cuando esta misma cuestión le fue resuelta adversamente a la sociedad demandada—después de desfilar prueba al efecto—preferimos discutirla para dejar establecida claramente la norma que debe seguirse a los fines de determinar la procedencia de esta alegación y las limitaciones de la misma. ■

En términos generales se ha sostenido que como la facultad de expropiar es un atributo inherente a la soberanía del Estado, las únicas limitaciones que pueden reconocerse a su ejercicio son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compen-

---

del conocimiento de la parte proponente, el objeto que se perseguía de lograr admisiones es uno de los fines reconocidos en este procedimiento sobre descubrimiento de prueba. Nos adherimos a ese criterio.

sación por ella. Cualquier duda que pudiera quedar como consecuencia del lenguaje contenido en la opinión de *United States* v. *Carmack*, 329 U.S. 230, 247 (1946) parece disiparse después de *Berman* v. *Parker*, 348 U.S. 26, 36 (1954), en el cual se reconoció la facultad de una agencia de desarrollo urbano para adquirir no sólo los edificios ruinosos sino toda el área en la cual éstos enclavaban a los fines de un proyecto de eliminación de arrabales. Se dijo que ". . . no corresponde a los tribunales escoger entre las distintas parcelas seleccionadas para ser objeto de expropiación", y se añadió que "[l]os derechos de estos propietarios se satisfacen cuando reciben la justa compensación que la Enmienda Quinta dispone como condición para la incautación."(²) En efecto, se ha sostenido que una vez se establezca que el uso para el cual se destina la propiedad expropiada constituye un fin público, no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo adecuado del sitio en particular, porque ésta es una función que ejerce la legislatura bien directamente o delegándola en agencias o funcionarios públicos. *Rindge Co.* v. *Los Angeles County*, 262 U.S. 700, 709 (1923); *Joslin Mfg. Co.* v. *City of Providence*, 262 U.S. 668 (1923); *Bragg* v. *Weaver*, 251 U.S. 57, 58 (1919); *Shoemaker* v. *United States*, 147 U.S. 282, 298 (1893); *Boom Co.* v. *Patterson*, 98 U.S. 400, 406 (1878); *United States* v. *South Dakota*, 212 F.2d 14 (C.A. 8, 1954); *Simmonds* v. *United States*, 199 F.2d 305, 306–7 (C.A. 9, 1952); *United States* v. *State of New York*, 160 F.2d 479, 480 (C.C.A. 2, 1947), cert. denegado 331 U.S. 832 (1947); *United States* v. *Meyer*, 113 F.2d 387 (C.C.A. 7, 1940), cert. denegado 311 U.S. 706 (1940). Véanse, además, 48 Cal. L. Rev. 164 (1960); 12 Okla. L. Rev. 163 (1959); 43 Iowa L. Rev. 290 (1958); 17 N. Dame L. 35 (1941); 24 Minn. L. Rev. 870 (1940).

(²) Para un análisis detallado de esta opinión, véase, el escolio 50 de la opinión emitida en *E. L. A.* v. *Aguayo*, 80 D.P.R. 552, 603 (1958).

En algunos sitios se reconoce que la selección de los bienes a expropiarse puede ser impugnada cuando ésta sea manifiestamente arbitraria, caprichosa o irrazonable, o cuando media fraude o mala fe, *Johnson et al.* v. *Consolidated Gas, Elec. Light and Power Co.*, 50 A.2d 918, 923 (Md. 1947); *Patterson Orchard Co.* v. *Southwest Arkansas Corp.* 18 S.W.2d 1028, 1032 (Ark. 1929); *State* v. *McCook*, 147 A. 126, 128 (Conn. 1929); *Wilton* v. *St. Johns County*, 123 So. 527, 535 (Fla. 1929); *City of Charlotte* v. *Heath*, 40 S.E.2d 600, 603 (N.C. 1946), pero un análisis cuidadoso revelará que esta doctrina deriva mayormente su fundamento de casos en que el estado ha delegado su facultad de expropiación en entidades privadas que se dedican a fines públicos o cuasi-públicos, como compañías de ferrocarril, de suministro de fuerza y energía eléctrica o de servicio público. Ese no es el caso ante nos pues se trata de una expropiación emprendida por una instrumentalidad pública para obvios propósitos públicos, o sea, para el desarrollo del fomento industrial. Aceptado que el propósito es público, *Pueblo* v. *Fajardo Sugar Co.*, 79 D.P.R. 321 (1956); *McCormick* v. *Marrero*, 64 D.P.R. 260 (1944); *People* v. *Eastern Sugar Associates*, 156 F.2d 316 (C.C.A. 1, 1946), cert. denegado en 329 U.S. 772 (C.C.A. 1, 1946), no nos corresponde revisar el ejercicio de la discreción administrativa en la selección de los terrenos expropiados o su adaptabilidad para el uso público específico a que se destinan. En *Southern Ry. Co.* v. *City of Memphis*, 148 S.W. 662 (Tenn. 1912) se dice "Todos los otros incidentes de la incautación (con excepción del propósito de la expropiación y la fijación de la justa compensación) son cuestiones políticas para la determinación del soberano y no corresponden a la rama judicial. La selección del sitio a ser expropiado, frente a la posibilidad de escoger otro sitio en el mismo vecindario, su adaptabilidad para el uso propuesto y el área necesaria para tal fin, son cuestiones políticas, que son inherentes a y forman la parte

medular de la facultad para expropiar. Esta facultad se tornaría en ilusoria si el propietario pudiera impugnar la conveniencia de seleccionar su propiedad en lugar de la del vecino, o si pudiera alegar que hay otras propiedades que cumplen mejor con los requisitos exigidos para el fin público en cuestión, o que, en su opinión, se requiere un área mayor o menor para ello."

Pero sea ello como fuere la parte peticionaria en el presente recurso está impedida en esta etapa de los procedimientos de levantar la defensa que hemos discutido, pues un examen de los autos revela que se solicitó el retiro de la suma consignada por el Estado como justa compensación, y efectivamente se expidió el cheque correspondiente por la suma de $121,827.40 a favor de la sociedad. Siendo así, la aceptación por la demandada del importe consignado le impide discutir cualquier otra cuestión que no se relacione exclusivamente con la cuantía de la indemnización. *Williams* v. *City of La Grange*, 98 S.E.2d 617 (Ga. 1957); *State* v. *Highway Dept.* v. *H. G. Hastings Co.*, 199 S.E. 793 (Ga. 1938); *Central of Georgia Ry. Co.* v. *Bibb Brick Co.*, 99 S. E. 126 (Ga. 1919). Una parte no puede voluntariamente aceptar la suma consignada como valor justo y razonable de su propiedad y continuar litigando el derecho del Estado para expropiar.

3. El interrogatorio 13 requiere información sobre prueba del terreno y copia de los informes que presumimos se refieran a la calidad del subsuelo. No es improcedente tal solicitud, *Martínez Rivera* v. *Tribunal Superior*, supra.

*Se modificará la resolución dictada por el Tribunal Superior, Sala de Expropiaciones, en 21 de junio de 1961 en el sentido de desestimar las objeciones presentadas a los interrogatorios 7, 13, 16, 17 y 18, y se ordenará a la parte demandante que proceda a contestarlos dentro del término y bajo las condiciones razonables que se fijen por el tribunal de instancia. Así modificada, se confirma.*