# 2004 DTA 135

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Peticionario-Recurrido

v.

SUCESIÓN DAMIÁN PLANAS PARRILLA
Parte con Interés-Peticionario

Núm. KLCE-03-00915

San Juan, Puerto Rico, a 26 de agosto de 2004

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz, y las Juezas Peñagarícano Soler y Bajandas Vélez

Bajandas Vélez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparecen ante nos, el Sr. Damián Planas Merced y el Sr. Xavier Planas Merced (los peticionarios o los hermanos Planas Merced) y nos solicitan la revocación de la Resolución en reconsideración emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 19 de junio de 2003 y notificada el 24 de junio de 2003. Mediante la misma, el TPI declaró No Ha Lugar la solicitud de expedición de citaciones a testigos presentada por el Sr. Xavier Planas Merced en el caso del epígrafe sobre expropiación forzosa.

Luego de un detenido estudio del expediente y del derecho aplicable, determinamos revocar la resolución recurrida.

### I

El Estado Libre Asociado de Puerto Rico (ELA o el recurrido), representado por el Departamento de Justicia, presentó ante el TPI una Petición con fecha de 24 de octubre de 2002 para adquirir mediante expropiación una servidumbre real y perpetua sobre cierto predio de terreno, con una cabida superficial de 4,406.9032 metros cuadrados, ubicado en el Barrio Quebrada Grande del Municipio de Trujillo Alto. Apéndice de los Peticionarios, págs. 3-10. Indicó que dicho derecho real era para uso y beneficio de la Autoridad de Energía Eléctrica de Puerto Rico (AEE) y era adquirido con el propósito de que esta última llevara a cabo el proyecto identificado como Línea 230 KV, Sabana Llana-Yabucoa. Además, expuso que estimaba como justa y razonable compensación por dicha adquisición la suma de treinta y dos mil trescientos noventa dólares ($32,390.00), la que fue depositada en Secretaría. Alegó que la Junta de Planificación de Puerto Rico (JP) había dispensado a la AEE de solicitar los correspondientes permisos respecto a la adquisición de dicha propiedad a base de las disposiciones de la Resolución número JPE-22 del 2 de julio de 1974 y sus extensiones. Identificó como partes con interés a los peticionarios, la Sra. Virginia Planas Merced y la Sra. Norma Planas Merced, quienes en conjunto componían, alegadamente, la Sucesión Damián Planas Parrilla. Incluyó con dicha petición un plano que alegó haber sido levantado por la AEE en el cual se identifica el lugar donde ubica la servidumbre dentro del aludido predio de terreno.

El 24 de enero de 2003, el Sr. Xavier Planas Merced (Sr. Planas) presentó por derecho propio una solicitud de prórroga, moción informativa y solicitud de orden. Apéndice de los Peticionarios, págs. 11-13. Adujo que había sido emplazado, pero no se le había entregado copia del plano oficial preparado por la AEE al cual se hacía alusión en la Petición. Señaló que pretendía oponerse y objetar la referida expropiación por entender que la misma era improcedente e injusta y constituia 'confiscación indebida, ya que mediante la misma se intentaba tomar una porción considerable de la finca, impidiendo todo uso razonable y efectivo de ésta.

Sostuvo, además, que la pretendida ubicación de torres y cables del tendido eléctrico en el área expropiada colocarían a dicho predio y la residencia sita en él en una posición desventajosa, toda vez que estaría totalmente rodeado de cables de alta tensión a ambos lados del mismo. Agregó que la servidumbre estaría pasando a una distancia aproximada de veinte (20) pies de un manantial de aguas minerales que suplía agua a los miembros de la comunidad. Solicitó al TPI que le concediera treinta (30) días para poder contratar representación legal y presentar su alegación responsiva. Por último, requirió que se le ordenara al recurrido notificarle copia del plano anejado a la Petición.

Mediante orden del 30 de enero de 2003, notificada el 21 de febrero de 2003, el TPI concedió al Sr. Planas treinta (30) días para que contestara la Petición de expropiación. Apéndice de los Peticionarios, págs. 14-15.

Posteriormente, el 26 de febrero de 2003, el Sr. Planas, por derecho propio, presentó su oposición. Apéndice de los Peticionarios, págs. 16-33. Argumentó que el plano incluido como anejo a la Petición no representaba correctamente la ubicación de la finca objeto de la expropiación. Esgrimió que, por información y creencia, la servidumbre que se pretendía adquirir por expropiación era totalmente innecesaria e inconveniente para la comunidad, para los propósitos de la finca y los de la AEE, debido a que el proyecto que se quería llevar a cabo mantenía una ruta direccional distinta a la que se intentaba establecer en la finca. Apuntó que dicho desvío respondía totalmente a intereses en conflicto y que su costo iba a ser sustancialmente mayor al proyectado para la ruta original de las líneas eléctricas. Asimismo, indicó que se le había informado que las líneas que realmente iban a pasar por la servidumbre eran las del sistema de cables eléctricos conocido como Línea 230 KV Aguirre-Sabana Llana (Aguirre) y no las del proyecto identificado como Línea 230 KV Sabana Llana-Yabucoa, comúnmente conocido como Lazo del Este (Lazo del Este). Puntualizó que varios funcionarios de la AEE, entre ellos, el Ing. Ramón Rodríguez Fonseca (Ing. Rodríguez), le habían informado que las líneas de Aguirre iban a ser removidas y desviadas hacia la servidumbre en cuestión, localizada al lado oeste de la finca, para entonces colocar las líneas del Lazo del Este en las antiguas torres de Aguirre, las cuales se encontraban ubicadas al lado este, dentro de la misma finca, en otra servidumbre previamente adquirida por expropiación.

De otro lado, expuso que con la desviación aludida se pretendían proteger los intereses del Sr. Carmelo Figueroa y sus familiares (Sr. Figueroa), quienes poseían terrenos y estructuras que se hubieran visto afectados si se hubiera llevado a cabo la ruta original de las líneas. Reiteró que de procederse con la expropiación, su finca y la estructura sita en ella quedaría rodeada por las líneas de alto voltaje de los sistemas Aguirre y Lazo del Este, lo que constituiría una confiscación de todo uso efectivo de la misma. Igualmente, cuestionó que la compensación estimada y consignada por el ELA haya sido una justa y razonable alegando que las propiedades en dicho sector se estaban vendiendo a cuarenta dólares ($40.00) o más el metro y en el caso del epígrafe procedía la expropiación total de la finca. Además de lo anterior, el compareciente levantó varias defensas afirmativas, entre las cuales especificó: *"La Autoridad de Energía Eléctrica ha ocultado al Tribunal hechos esenciales para una justa y adecuada determinación sobre la procedencia de la Petición, incurriendo en fraude al Tribunal y perjurio"*. Apéndice de los Peticionarios, pág. 18.

En la misma oposición a la Petición, el Sr. Planas presentó una reconvención. Adujo, en resumen, que el ELA, a través de la AEE, le había causado graves daños emocionales por haber incurrido en conducta impropia e ilegal al penetrar en su propiedad sin su consentimiento ni autorización, cortando árboles, arbustos y plantas en áreas de su finca que no estaban dentro de la servidumbre.

Así las cosas, el 26 de febrero de 2003, el Sr. Planas presentó una solicitud de *Injunction* Preliminar y Permanente dentro del procedimiento de expropiación. Apéndice de los Peticionarios, págs. 34-41. Requirió en ésta la paralización de los procedimientos de expropiación y de los trabajos que se pretendían realizar en su finca hasta tanto el TPI escuchara a las partes y llevara a cabo una inspección de la propiedad. Reiteró que la AEE pretendía desviar las líneas eléctricas del Lazo del Este para colocarlas al lado oeste de las líneas de

Aguirre, para luego orientarlas nuevamente al lado este de este último. Añadió que esta desviación produciría que, en algún momento, las líneas de Aguirre y las del Lazo del Este pasaran unas por debajo de las otras, lo que era ilegal e ilógico. Agregó que, según le había informado el Ing. Rodríguez, esta desviación de líneas eléctricas no había sido aprobada, por lo que iban a remover las líneas de Aguirre para instalarlas en las torres localizadas en la pretendida servidumbre para entonces situar las líneas del Lazo del Este en las antiguas torres de Aguirre. Indicó que algunos empleados de la AEE, entre éstos el Sr. Hiram Ruiz, le habían confirmado la información referente al traslado de las líneas eléctricas de una torre a otra. Sostuvo, además, que el personal de la AEE, incluyendo al Ing. Rodríguez y al Ing. Eduardo Goitía (Ing. Goitía), le habían indicado que el plan original era que las líneas del Lazo del Este iban a mantenerse todo el tiempo al lado este de Aguirre y, por tanto, al este de su finca. Señaló que, a base del plan original, su finca no hubiera quedado afectada por el proyecto, y sí se hubieran visto afectadas las propiedades del Sr. Figueroa y otras, ubicadas al lado este de su propiedad. Alegó que la razón real por la cual habían decidido cambiar la alineación del Proyecto Lazo del Este era para proteger la propiedad del Sr. Figueroa, quien era ex-empleado de la AEE y amigo personal de altos funcionarios de dicha corporación. Por último, argumentó que la ocultación por parte de la AEE de toda esa información constituia un fraude al Tribunal y al erario por pretender incurrir en gastos exorbitantes e innecesarios para proteger los intereses privados de algunos, poniendo en peligro la seguridad y salud de los vecinos del lugar.

El 28 de febrero de 2003, el TPI señaló una vista para el 18 de marzo de 2003. A consecuencia de ello, el 11 de marzo del mismo año, el Sr. Planas solicitó al TPI una orden para que citaran a dicha vista como testigos al Ing. Rodríguez, al Sr. Héctor Rosario (Sr. Rosario), Director Ejecutivo de la AEE y al Ing. Goitía. Apéndice de los Peticionarios, pág. 46.

En la vista celebrada el 18 de marzo de 2003, comparecieron las partes y los señores Rodríguez y Goitía, quienes no declararon en la misma. Luego de escuchados los argumentos de las partes, el TPI concluyó que no tenía competencia para dilucidar una solicitud de *injunction* en un proceso de expropiación y tomó la misma como una impugnación al fin público. *Certiorari*, pág. 5.

El 1ro de abril de 2003, los peticionarios presentaron una moción solicitando relevo de sentencia y remedio urgente. Apéndice de los Peticionarios, págs. 42-70. Acompañaron la misma con ciertos documentos relacionados a la expropiación. Esgrimieron que el TPI debía dejar sin efecto la Resolución fechada el 1ro de noviembre de 2002 en la cual se concedió al ELA un derecho de servidumbre sobre la finca de éstos, toda vez que dicha expropiación no respondía al propósito por el cual fue solicitada y cuyo fin público estaba en seria y franca controversia. Entre otras cosas, puntualizaron que las agencias pertinentes no tenían conocimiento del proyecto Lazo del Este, por lo que la AEE podía construir y hacer movimientos de líneas eléctricas sin supervisión ni intervención de estas agencias. Por último, reiteraron sus anteriores planteamientos.

El 3 de abril de 2003, notificada el 7 del mismo mes y año, el TPI determinó que no tenía nada que proveer con respecto a la moción de relevo de sentencia y remedio urgente. Añadió que había una vista pautada para el 29 de abril de 2003 en la cual se iba a considerar la impugnación del fin público. Apéndice de los Peticionarios, págs. 71-73.

Posteriormente, el recurrido presentó una moción en oposición a la impugnación del fin público fechada el 16 de abril de 2003. Apéndice de los Peticionarios, págs. 78-80. En ella, esbozó jurisprudencia sobre la determinación de lo que constituye un fin público y la norma de abstención de los tribunales con tal determinación. Sin exponer sus argumentos, solicitó al TPI que declarara no ha lugar la impugnación al fin público.

Nuevamente, el 17 de abril de 2003, el Sr. Planas solicitó al TPI que citara a ciertos testigos. Apéndice de los Peticionarios, págs. 74-75. Expuso que para poder poner al TPI en posición de resolver la controversia, era

necesaria la citación de ciertas personas para la vista del 29 de abril, las cuales eran oficiales y empleados de la AEE con conocimiento personal de los hechos y cuyo testimonio era esencial para la resolución del caso. Identificó a estos testigos como el Sr. Rosario, el Ing. Rodríguez, el Sr. Hiram Ruiz, el Ing. Goitía, el Sr. Héctor Alejandro, Director de Planificación de Estudios, y el Sr. Luis Maldonado, agrimensor que estuvo a cargo de medir la finca.

Con fecha de 28 de abril de 2003, el ELA presentó una moción en oposición a la solicitud de expedición de citaciones. Apéndice de los Peticionarios, págs. 76-77. Adujo que el 10 de marzo de 2003, se celebró una vista en la que se discutió la impugnación al fin público y en la cual estuvieron presentes y disponibles la mayoría de los testigos que el Sr. Planas intentaba citar a través del Tribunal. Agregó que en dicha vista, el Tribunal había concedido tiempo a las partes para que expresaran por escrito sus respectivas posiciones sobre el fin público, por lo que la solicitud del Sr. Planas era prematura, dado que no se había expresado por escrito sobre la oposición presentada por la compareciente. Solicitó que el TPI transfiriera la vista pautada para el 29 de abril de 2003 hasta tanto resolviera si procedía o no la impugnación del fin público.

El ELA, nuevamente, presentó otra moción en oposición a la impugnación del fin público con fecha de 29 de abril de 2003. Apéndice de los Peticionarios, págs. 81-84. Esta vez, añadió que la determinación del fin público era una de carácter político que, en este caso, le correspondía hacer a la AEE, toda vez que era el organismo público con conocimiento administrativo pericial para determinar por dónde específicamente iban a pasar los tendidos eléctricos y las correspondientes servidumbres. Indicó que la decisión de la AEE de expropiar una servidumbre en la finca de los peticionarios fue una basada en estudios, análisis y evaluaciones de las circunstancias particulares del tramo proyectado para el Lazo del Este. Alegó que dicha determinación respondió a que la ruta escogida era la de menor impacto económico y social, ya que utilizar la ruta original equivaldría a impactar más residencias y desalojar más personas. Concluyó esbozando el argumentó de que el Sr. Planas no tenía capacidad en ley para impugnar la decisión administrativa de un organismo como la AEE, ya que la misma era una cuestión política que formaba parte medular de la facultad del Estado de expropiar.

El 2 de mayo de 2003, el Sr. Planas presentó una solicitud de orden para que se le notificara copia de las certificaciones, estudios, análisis y evaluaciones de lugar de la expropiación, así como las propuestas y planos de construcción. Apéndice de los Peticionarios, págs. 85-87. Puntualizó que el ELA había alegado que había escogido la ruta de menor impacto económico y social a base de ciertos estudios. Apuntó que dicha posición era contraria a la argumentada por él, debido a que las propiedades que se pretendían proteger con la ruta alterna eran unas que ya se encontraban en violación a la servidumbre existente de las líneas de Aguirre, la cantidad de personas a ser desalojadas por la ruta original era menor a la de la ruta alterna, y esta última resultaba ser más costosa para el ELA. Asimismo, señaló que el recurrido se oponía a la impugnación del fin público sin que el compareciente hubiera tenido la oportunidad de presentar evidencia e interrogar a los testigos del primero. Solicitó, por tanto, que el ELA le proveyera copia de todo documento demostrativo de estudios, análisis y evaluaciones, así como planos, propuestas, certificaciones y aprobaciones, tanto del proyecto original como de la ruta alterna, con el propósito de examinarlos y utilizarlos para contestar y replicar adecuadamente la oposición a la impugnación del fin público.

Ese mismo día, los hermanos Planas Merced presentaron una moción urgente solicitando inspección y producción de documentos. Apéndice de los Peticionarios, págs. 88-90. Arguyeron que, según sus alegaciones, era necesaria una inspección de la finca para que el TPI pudiera resolver justicieramente la impugnación del fin público, hecho que no podía resolverse por papeles y mapas. Además, solicitó al TPI que ordenara al ELA producir ciertos documentos relacionados con el proyecto.

El recurrido, con fecha de 14 de mayo de 2003, presentó una réplica a la solicitud de los peticionarios. Apéndice de los Peticionarios, págs. 91-92. Se opuso a la citación de la mayoría de los testigos que pretendía utilizar el Sr. Planas a base de que sus testimonios no eran pertinentes y su aportación a la resolución de la

controversia iba a ser mínima, debido a que no intervinieron en la decisión sobre la ubicación del proyecto Lazo del Este. En cuanto a los señores Luis Maldonado y Eduardo Goitía, informó que ambos iban a ser utilizados como testigos del ELA, ya que eran empleados de la AEE con conocimiento de los hechos que dieron base a la determinación de la ubicación de la servidumbre en controversia.

El 13 de mayo de 2003, notificada el 16 de mayo de 2003, el TPI declaró no ha lugar la solicitud de vista ocular y concedió al ELA diez (10) días para que replicara sobre la solicitud de producción de documentos. Apéndice de los Peticionarios, págs. 94-99.

El 22 de mayo de 2003, notificada el 27 del mismo mes y año, el TPI declaró no ha lugar la solicitud de citación de testigos presentada por el Sr. Planas. Concluyó que en un procedimiento de expropiación, el demandado no podía iniciar descubrimiento de prueba dirigido a obtener información para sostener su alegación de que la expropiación era caprichosa y arbitraria. Apéndice de los Peticionarios, págs. 103-105.

Posteriormente, con fecha de 29 de mayo de 2003, el recurrido replicó a la solicitud de producción de documentos. Apéndice de los Peticionarios, págs. 100-101. Expuso que, de acuerdo a la jurisprudencia, en un procedimiento de expropiación forzosa de propiedad particular, los demandados no podían notificar descubrimiento de prueba dirigido a obtener información a los fines de sostener su alegación de que la selección de los terrenos expropiados fue caprichosa y arbitraria. Al tenor de ello, solicitó que el TPI declarara no ha lugar dicha solicitud.

Inconforme con la determinación del TPI de denegar la citación de testigos y el descubrimiento de documentos, el Sr. Planas solicitó reconsideración el 5 de junio de 2003. Apéndice de los Peticionarios, págs. 106-110. Sostuvo que el ELA había obrado en fraude al tribunal, con mala fe y con ausencia de uso público real en el presente caso, alegaciones que podían ser corroboradas por los oficiales que el TPI se negaba a citar. Igualmente, esgrimió que dicho foro, en dos ocasiones, había tenido ante sí a las personas con conocimiento personal de lo alegado y no había querido sentarlos a testificar. Agregó que los testigos solicitados podían corroborar hechos de los cuales tenían conocimiento personal, o sea, que las líneas del Lazo del Este nunca iban a pasar por la pretendida servidumbre, sino que iban a mover las líneas de Aguirre a la misma. Acotó que este hecho no sólo era diferente a lo alegado en la Petición, sino que resultaba en una doble expropiación de la finca utilizando como base para ello las mismas líneas o uso. Arguyó, por último, que la jurisprudencia reconoce el derecho de los demandados, en casos de expropiación, a utilizar los mecanismos de descubrimiento de prueba que sean necesarios para defender sus intereses.

El 19 de junio de 2003, notificada el 24 de junio del mismo año, el TPI emitió la resolución recurrida en la cual declaró no ha lugar la reconsideración solicitada. Apéndice de los Peticionarios, págs. 111-118. Expuso que la jurisprudencia había permitido la impugnación de los bienes a expropiarse cuando la selección había sido patentemente arbitraria, caprichosa o irrazonable, o cuando hubiera mediado fraude o mala fe, sólo en aquellas circunstancias en que el Estado había delegado su facultad de expropiación en entidades privadas dedicadas a fines públicos, situación que no era análoga a la del presente caso. Asimismo, fundamentó su decisión en que el descubrimiento de prueba estaba disponible para medir la adecuacidad de la compensación, hecho que no se estaba dilucidando en el momento. Concluyó que ninguna de las personas a las que se pretendía citar podrían aportar información significativa adicional para la resolución de la controversia de fin público, ya que esa determinación fue tomada por el Estado o por la agencia con dicha facultad, determinación que debía ser respetada por los tribunales.

Insatisfechos, el 22 de julio de 2003, los peticionarios presentaron el recurso que nos ocupa, señalando lo siguiente:

*"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REHUSAR EXPEDIR CITACIONES DE*

*TESTIGOS Y ORDENAR LA PRODUCCIÓN DE DOCUMENTOS SOLICITADOS POR LAS PARTES CON INTERÉS, ADUCIENDO QUE NO PROCEDE DECUBRIR PRUEBA EN UN PROCEDIMIENTO DE EXPROPIACIÓN FORZOSA."*

En síntesis, reiteran sus planteamientos sobre fraude al tribunal fundamentándose en que en el proceso de expropiación se sometió un plano de un proyecto que no concuerda con la realidad, que no posee la aprobación de las agencias pertinentes y por haberse esgrimido propósitos falsos para adelantar intereses privados. Añaden que, en este caso particular, el Tribunal debe ser especialmente incisivo y brindarles la oportunidad de probar sus alegaciones, permitiendo la entrega de documentos y citando a los testigos solicitados. Finalmente, sostienen que la jurisprudencia y el debido proceso de ley establecen el derecho del demandado en un caso de expropiación a utilizar los mecanismos de descubrimiento de prueba necesarios y pertinentes, y de obtener un juicio justo, rápido, económico y sin ventajas para nadie.

El mismo 22 de julio, los hermanos Planas Merced presentaron una moción en auxilio de jurisdicción. Informaron que había una vista pautada para el 27 de agosto de 2003 en la que se iba a dilucidar la impugnación del fin público y sus alegaciones de fraude, mala fe y arbitrariedad. Adujeron que en la vista debían contar con el testimonio de los funcionarios de la AEE, pues de lo contrario se violentaría el derecho a un debido proceso de ley. Por tanto, solicitaron la paralización inmediata de los procedimientos hasta que se dilucidara la controversia planteada ante este Tribunal. Ese mismo día, notificada el 23 de julio de 2003, determinamos expedir el auto de *Certiorari* solicitado. Igualmente, concedimos al recurrido treinta (30) días para que fijara su posición respecto al recurso presentado.

El 14 de agosto de 2003, el ELA presentó su oposición. Argumenta que ha cumplido con los requisitos exigidos por la Ley de Expropiación Forzosa ■ al presentar su Petición, la cual es específica y detallada en cuanto a la descripción de la propiedad a ser expropiada; informa la autoridad legal bajo la cual se pretende adquirir la misma; el propósito de la expropiación; y fija la valoración de la compensación que se considera justa. Escrito en Cumplimiento de Orden, págs. 7-8. Alega que los peticionarios intentan de manera totalmente infundada, cuestionar el fin público que persigue la expropiación, basándose en generalidades y conjeturas, las cuales no están avaladas con prueba convincente de clase alguna. Añade que el descubrimiento de prueba en un caso de expropiación está limitado a la inspección o copia del informe del perito tasador, toda vez que la justa compensación es el aspecto que puede ser impugnado por la parte con interés. Aduce, además, que es improcedente que los peticionarios pretendan despojar o interferir con sus testigos, al igual que es impertinente la citación del Director Ejecutivo de la AEE, dado que, por motivo inherente a su multiplicidad de funciones y tareas en dicha corporación pública, no tiene un conocimiento particular y detallado de todos los pormenores del proyecto.

El 25 de agosto de 2003, los hermanos Planas Merced presentaron una réplica a la oposición presentada por el ELA. Sostienen que los testimonios son pertinentes al asunto en controversia, debido a que el Sr. Eduardo Goitía fue quien sometió los planos en controversia al TPI y quien alteró la ruta original del proyecto; el Ing. Rodríguez es el Supervisor a cargo de la construcción del Lazo del Este; y el Sr. Rosario había intervenido directamente con el asunto y promovió la investigación de los peticionarios con la carta que éstos recibieron de su parte. Aclaran que su acción no corresponde a la impugnación del fin público o la selección de los terrenos, sino a la ilegalidad del proceso y la emisión de una sentencia que se dictó a base de la presentación de planos certificados y endosados por la AEE, sin intervención de las agencias fiscalizadoras pertinentes, en franca violación a las leyes.

El 27 de agosto de 2003, concedimos al ELA quince (15) días para que se expresara en torno a la réplica presentada por los peticionarios. No obstante, el 19 de septiembre de 2003, los hermanos Planas Merced presentaron una moción informativa y solicitud de orden para acumular casos relacionados. Notificaron que habían presentado una querella ante ARPE para que investigaran la situación de los planos certificados y

endosados exclusivamente por AEE. Argumentaron, además, que existían varios casos ante el TPI que versaban sobre la misma alineación eléctrica presentada por la AEE y solicitaron que los mismos fueran acumulados con el del epígrafe. El 30 de septiembre de 2003, declaramos no ha lugar la consolidación de los casos pendientes ante el TPI, en esa etapa de los procedimientos.

El 2 de octubre de 2003, los peticionarios, mediante una moción, informaron que ARPE había realizado una inspección investigativa conforme a la querella presentada por ellos. Incluyeron con dicha moción copia del informe sobre la aludida inspección, así como copia de la querella presentada ante ARPE. Además, solicitaron una vista evidenciaria ante este Tribunal, la cual denegamos mediante resolución del 8 de octubre de 2003.

El 6 de octubre de 2003, el ELA presentó su escrito en oposición a la réplica de los peticionarios. Reiteran que las alegaciones de los hermanos Planas Merced carecen de sustancialidad y no constituyen base suficiente para promover la comparecencia al tribunal de importantes funcionarios de la AEE.

El 13 de abril de 2004, el recurrido presentó moción informativa en la cual expuso que ARPE había archivado la solicitud de investigación presentada por los peticionarios, por lo que se evidenciaba una total carencia de méritos en los planteamientos de estos últimos.

El 20 de abril de 2004, los hermanos Planas Merced presentaron su oposición a la moción informativa del ELA. Aducen que la querella presentada ante ARPE no tenía que ver con la controversia presentada ante este Tribunal, por lo que se debe continuar con el caso hasta que emitamos una decisión sobre el asunto planteado, o sea, la procedencia del derecho a citar testigos y el descubrimiento de prueba solicitado.

## II

El Art. II, sección 9 de nuestra Constitución, establece que *"[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley"*. Const. E.L.A., Art. II, sec. 9, 1 L.P.R.A. Igualmente, instituye el derecho a que ninguna persona sea privada de su propiedad sin el debido proceso de ley. Const. E.L.A., Art. II, sec. 7.

Reiteradamente, se ha dicho que el derecho de expropiación del Estado es un atributo inherente y necesario de la soberanía y es superior a todos los derechos de propiedad. *López v. Autoridad de Energía Eléctrica,* **2000 J.T.S. 126**, 151 D.P.R. ___ (2000); *Adm. de Terrenos v. Nerashford Dev. Corp.,* 136 D.P.R. 801 (1994); *E.L.A. v. Registrador,* 111 D.P.R. 117 (1981). Sin embargo, este poder del Estado está limitado por la exigencia del pago de una justa compensación, que el objeto expropiado sea para un fin público, y que se siga el procedimiento establecido por ley. *Culebra Enterprises Corp. v. E.L.A.,* 143 D.P.R. 935 (1997); *Hampton Development Corp. v. E.L.A.,* 139 D.P.R. 877 (1996); *E.L.A. v. Registrador, supra; E.L.A. v. Rosso,* 95 D.P.R. 501 (1967); *M. Mercado e Hijos v. Tribl. Superior,* 85 D.P.R. 370 (1962).

También se ha sostenido que una vez se establece que el uso para el cual se destina la propiedad expropiada constituye un fin público, no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, o la necesidad o lo adecuado del sitio en particular a ser expropiado. Ello, porque ésta es una función que ejerce la legislatura, bien directamente o delegándola en agencias o funcionarios públicos. *M. Mercado e Hijos v. Tribl. Superior, supra*, pág. 376.

Por otro lado, en algunas jurisdicciones se ha reconocido que la selección de los bienes a ser expropiados puede ser impugnada cuando ésta sea manifiestamente arbitraria, caprichosa o irrazonable, o cuando media fraude o mala fe. *Id.*, pág. 377. Sin embargo, nuestro más Alto Foro ha interpretado que dicha doctrina deriva su fundamento mayormente de casos en que el Estado ha delegado su facultad de expropiación en entidades privadas que se dedican a fines públicos o cuasi-públicos, como las compañías de suministro de energía eléctrica. *Id.*

Particularmente, nuestro Tribunal Supremo ha establecido que:

*"**Aceptado que el propósito es público,** no nos corresponde revisar el ejercicio de la discreción administrativa en la selección de los terrenos expropiados o su adaptabilidad para el uso público específico a que se destinan. Todos los otros incidentes de la incautación (**con excepción del propósito de la expropiación y la fijación de la justa compensación**), son cuestiones políticas para la determinación del soberano y no corresponden a la rama judicial. La selección del sitio a ser expropiado, frente a la posibilidad de escoger otro sitio en el mismo vecindario, su adaptabilidad para el uso propuesto y el área necesaria para tal fin, son cuestiones políticas, que son inherentes a y forman la parte medular de la facultad para expropiar. Esta facultad se tornaría en ilusoria si el propietario pudiera impugnar la conveniencia de seleccionar su propiedad en lugar de la del vecino, o si pudiera alegar que hay otras propiedades que cumplen mejor con los requisitos exigidos para el fin público en cuestión, o que, en su opinión, se requiere un área mayor o menor para ello".* (Énfasis nuestro y citas omitidas.) *Id.*, págs. 377-378.

En suma, un proceso de expropiación forzosa no puede detenerse con el fin de que los tribunales determinen si existe una necesidad sobre el terreno en particular que se ha de adquirir o si otro terreno pudiera servir mejor los propósitos del Estado. Véase Nichols, Philip, *Nichols on Eminent Domain,* Matthew Bender, Vol. 1A § 4.11, págs. 4-166 a 4-172.

No obstante, lo anterior no significa que el dominio eminente del Estado sea absoluto. Ello, debido a que este poder constitucional tiene que ejercerse dentro del marco de un debido proceso de ley. Este último exige que exista un propósito o uso público para la propiedad privada que se pretende expropiar, elemento que puede ser objeto de litigio dentro del procedimiento de expropiación. *Id.*, § 4.7, págs. 4-31 a 4-37. ■ Después de todo, por virtud de esta garantía constitucional, el derecho de una persona cuya propiedad es tomada por el Estado implica, no sólo el derecho a recibir justa compensación, sino también el derecho a defenderse contra la toma de su propiedad. Nichols, *Op. Cit.*, Vol. 7, § 1.05, págs. 1-7. Por supuesto, dicha defensa procede únicamente con respecto al propósito de la expropiación y la justa compensación que éste depositó como razonable, mas no puede extenderse a la selección particular de una propiedad en lugar de otra.

En cuanto al propósito que se persigue con la expropiación, se ha reconocido que, una vez que la declaración legislativa o del organismo delegado sea de utilidad pública, no le corresponde a las cortes intervenir con la manera y medios que éstos escojan para ejercer el poder de expropiar, aun cuando no se haya señalado un propósito público específico. *E.L.A. v. Rosso, supra,* págs. 537-538. Sin embargo, los tribunales deben analizar con cuidado y recelo el propósito público que se alega como justificación para la expropiación cuando dicho propósito es razonablemente cuestionado.

*"Any condemnation must serve a public purpose or public necessity, or the condemnation is invalid . . . When the power of eminent domain is exercised in a way benefiting specific and identifiable private interests, a court inspects with heightened scrutiny the claim that the public interest is the predominant interest being advanced . . . .The public benefit must not only be the primary benefit conferred by the condemnation, but must also be "clear and significant" rather than "speculative or marginal."* Nichols, *Op. Cit.*, Vol. 7, § 5.01[3], pág. 5-11.

De otra parte, se ha resuelto reiteradamente que el descubrimiento de prueba debe ser amplio y liberal. *Alvarado v. Alemañy*, **2002 J.T.S. 98**, 157 D.P.R. ___ (2002); *Rivera v. Banco Popular,* **2000 J.T.S. 156**, 152 D.P.R. ___ (2000); *Rivera v. Algarín*, 112 D.P.R. 830 (1982), *García Negrón v. Tribunal Superior*, 104 D.P.R. 727, 738 (1976). El mismo sólo tiene dos limitaciones, a saber: (1) que la información objeto del descubrimiento no sea privilegiada; y (2) que la misma sea pertinente al asunto en controversia. *Alvarado v. Alemañy, supra; Rivera v. Algarín, supra.* Regla 23.1 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III.

La pertinencia en el contexto del descubrimiento de prueba debe ser interpretada en términos amplios, pues se trata de un concepto más dilatado que el de pertinencia para fines de la admisibilidad de la evidencia. *Vicenti v. Saldaña,* **2002 J.T.S. 72**, 157 D.P.R. ___ (2002); *Sierra v. Tribunal Superior,* 81 D.P.R. 554 (1959). Así, para que una materia pueda ser objeto de descubrimiento de prueba, basta con que exista una posibilidad razonable de relación con el asunto en controversia, aunque no esté relacionada con las controversias específicas esbozadas en las alegaciones. *Alfonso Brú v. Trane Export, Inc.,* **2001 J.T.S. 132**, 155 D.P.R. ___ (2001); *Sierra v. Tribunal Superior, supra.*

El concepto de pertinencia, como límite del descubrimiento de prueba, tiene que interpretarse de manera cónsona con el principio rector de las reglas procesales: lograr la solución de la controversia de forma justa, rápida y económica. *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, (1986); *García Negrón v. Tribunal Superior, supra.* Sin embargo, esto no significa que el descubrimiento de prueba es una carta en blanco a utilizarse indiscriminadamente para hostigar y perturbar a una parte. Por ello, el tribunal puede limitar su alcance y los mecanismos a utilizarse, siempre que con tal proceder adelante la solución de las controversias de forma rápida, justa y económica. *Vicenti v. Saldaña, supra; Alfonso Brú v. Trane Export, Inc., supra.*

Como se sabe, las reglas sobre el descubrimiento de prueba son de aplicación a los procedimientos para la expropiación forzosa de propiedad particular. *Martínez Rivera v. Tribunal Superior,* 85 D.P.R. 1, (1962). Cynthia Torres Torres, *La Expropiación Forzosa en Puerto Rico*, 2002, págs. 66-69. De ordinario, la evidencia que se presenta en este tipo de litigio es especializada y técnica, y gira en torno al valor de la propiedad adquirida y de los daños ocasionados, por lo que en la mayoría de las ocasiones, el descubrimiento de prueba es exclusivamente de índole pericial. Torres Torres, *Op. Cit.*, pág. 66. Sin embargo, esto no es óbice para que una parte pueda descubrir prueba sobre otros extremos pertinentes a un caso de expropiación forzosa. Dado que la Regla 58.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 58.5, le permite a cualquier demandado dentro de este procedimiento levantar toda defensa u objeción que pueda oponer a la adquisición de la propiedad, esta parte, como cualquier otro litigante, debe tener derecho a descubrir prueba para poder litigar adecuadamente sus defensas u objeciones, con las limitaciones previamente mencionadas.

El ámbito del descubrimiento de prueba en los casos de expropiación forzosa depende de los hechos de cada caso en particular y debe dejarse a la informada discreción del tribunal de instancia. Éste debe guiarse por el consabido propósito de lograr la celebración de un juicio justo, rápido y económico, sin ventajas para ninguna de las partes. *Id.* 13.

## III

A tenor con el derecho esbozado, nos corresponde determinar si los peticionarios tienen derecho al descubrimiento de prueba solicitado en el caso del epígrafe, incluyendo la citación de testigos, la cual fue denegada por el TPI mediante la Resolución recurrida. Debemos comenzar, por tanto, analizando las alegaciones de las partes que, en resumen, son las siguientes:

El ELA plantea que interesa adquirir para uso y beneficio de la AEE una servidumbre sobre parte del terreno identificado en su Petición con el propósito de utilizarlo para el proyecto Línea 230 KV, Sabana Llana-Yabucoa (Lazo del Este). Por su parte, el Sr. Planas arguye que el mencionado propósito es uno simulado, debido a que había sido informado por empleados de la AEE de que las líneas del Lazo del Este no pasarían por la servidumbre en cuestión, sino que se iban a trasladar las líneas de Aguirre, ya ubicadas en otra parte del mismo fundo perteneciente al peticionario, a la parte que pretendían expropiar. Añade que la verdadera razón o propósito de dicha expropiación es que la AEE no quiere expropiar terrenos de un ex-empleado suyo que colindan con los de la parte peticionaria, por lo que la AEE pretende beneficiar a dicho ex-empleado con la expropiación.

En atención a estas alegaciones, el TPI señaló vista para el 29 de abril de 2003 en la cual se iba a considerar

la impugnación del fin público. █ Debido a ello, el 17 de abril de 2003, el Sr. Planas solicitó la expedición de citaciones a seis testigos, los cuales indicó eran oficiales y empleados de la AEE con conocimiento personal de los hechos del caso y cuyos testimonios eran esenciales para dilucidar la controversia. █

Por su parte, el ELA presentó su oposición a la citación de los testigos fechada el 14 de mayo de 2003. Esgrimió que la citación de la mayoría de los testigos era impertinente y su aportación a la resolución de la controversia sobre el fin público iba a ser mínima, debido a que éstos no intervinieron en la decisión sobre la ubicación del proyecto Lazo del Este. █ Sin embargo, notificó que presentaría como testigos en la vista sobre impugnación a los señores Luis Maldonado y Eduardo Goitía, sosteniendo que éstos eran empleados de la AEE con conocimiento de los hechos sobre el caso.

Así las cosas, el 22 de mayo de 2003, el TPI declaró no ha lugar a la solicitud de citación de testigos. █ Luego de que el Sr. Planas presentara reconsideración sobre dicha determinación, el 19 de junio de 2003, el TPI emitió la Resolución recurrida en la que reiteró su dictamen. █ Concluyó que el Sr. Planas no podía impugnar el fin público a base de que la AEE había actuado fraudulentamente y con mala fe en la selección de su terreno, protegiendo con ello los intereses de ex-empleados de dicha corporación pública. Añadió que el fin público para el cual se expropiaba, según surgía del expediente, era el proyecto Línea 230 KV, Sabana Llana-Yabucoa (Lazo del Este) y que ninguna de las personas a las que éste pretendía citar podrían aportar información significativa adicional para la resolución de la controversia en torno al fin público.

Según hemos expuesto, en un caso ordinario de expropiación forzosa, una vez el tribunal determina que se persigue un uso público para la propiedad que se pretende expropiar, la parte con interés está impedida de cuestionar la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo adecuado del lugar en particular y la selección del terreno. Es decir, cualquier prueba sobre dichos asuntos sería impertinente al proceso de expropiación. Siendo así, nuestro esquema procesal le impide a dicha parte descubrir prueba o citar testigos en apoyo a estas alegaciones que no pueden ser dilucidadas en la vista sobre expropiación.

Sin embargo, no estamos ante un caso ordinario de expropiación forzosa en el cual el ELA expropia terrenos para una instrumentalidad pública para obvios propósitos públicos. De entrada, somos del criterio que, dada las alegaciones de las partes, el TPI no estaba en posición de determinar si, efectivamente, la adquisición del aludido terreno respondía a un propósito o fin público. De estas alegaciones, surge una clara controversia sobre el verdadero propósito de la adquisición del terreno o de la servidumbre que se pretende ubicar en él. El Sr. Planas reiteradamente planteó ante el TPI que según información obtenida a través de varios empleados de la AEE, █ esta última no estaba utilizando la servidumbre para el propósito alegado por el ELA en su petición, o sea, para el proyecto Lazo del Este. Aún más, arguyó que en la expropiación de su terreno entraron consideraciones ajenas a un fin público, o sea, el beneficiar intereses privados de un empleado de la AEE. En fin, la determinación sobre la existencia de fin público en la expropiación no es una obvia.

Además de lo anterior, el caso ante nos trata de una expropiación iniciada por el ELA a instancias de la AEE, corporación pública que goza esencialmente de elementos de una entidad privada. Es decir, no estamos ante una expropiación emprendida por una clásica instrumentalidad pública, que no posee personalidad jurídica propia y cuya identidad se funde con la propia identidad del Estado. Aun cuando la AEE es una instrumentalidad del ELA, en el amplio sentido de la palabra, no es menos cierto que la misma es una corporación con existencia y personalidad legal separadas y aparte del Gobierno Estatal y de la de los funcionarios que la controlan. █ Es una *"entidad público-privada"* que, aun cuando se considera corporación pública, goza de la estructura corporativa de una institución privada, funcionando en forma totalmente independiente del ELA, y poseyendo todos los derechos y deberes de una parte o litigante privado. █ Así, vemos como el legislador separó rotundamente los activos, pasivos y capital de la AEE de los pertenecientes al Estado, █ la autorizó a hacer y emitir bonos █ e, inclusive, la facultó a hacer contratos, arrendamientos,

convenios u otras transacciones con el ELA o sus subdivisiones políticas.

Habida cuenta de que la AEE posee una estructura operacional y financiera característica de una corporación privada y desvinculada a la del ELA, no podemos impregnar sus decisiones con la "*inmunidad*" que revisten las decisiones tomadas por una instrumentalidad enteramente pública, o sea, por el Estado. Por consiguiente, el TPI debe analizar cautelosamente las alegaciones del Sr. Planas sobre la existencia de intereses enteramente personales en la decisión tomada por dicha corporación al solicitar la expropiación de la propiedad, aun cuando el procedimiento de expropiación lo lleva el ELA. Es por ello que entendemos que, en el caso particular ante nuestra consideración, la existencia de un fin público debe ser objeto de especial consideración, y no bebe ser despachada ligeramente con una simple alegación en la Petición y un plano del proyecto. Ciertamente, el Sr. Planas puede impugnar el fin público probando que la AEE ha ocultado la verdadera razón de la expropiación, al igual que el ELA tiene el claro derecho de presentar testigos y documentos que prueben su alegación como, en efecto, lo pretendía hacer. En fin, el derecho del Sr. Planas de descubrir y presentar prueba, en nada perjudica al ELA, quien había anunciado la presentación de dos de los testigos solicitados por el primero.

Dado que existe una controversia en cuanto al propósito o fin público que se persigue con la expropiación, y que esta última es una iniciada a instancia de la AEE, una entidad público-privada independiente del ELA que no está exenta de tomar decisiones a base de intereses privados, procedía que el TPI dilucidara en una vista la existencia o ausencia de un fin público en la expropiación de dicho terreno. En preparación a la misma, las partes tenían derecho a descubrir prueba y citar testigos que pudieran esclarecer el fin que se persigue con la expropiación. Esto incluye cualquier prueba que tendiera a demostrar propósitos ajenos a la utilidad pública, como por ejemplo, beneficiar de manera exclusiva a un tercero mediante dicha expropiación.

Al tenor de lo anterior, erró el TPI al resolver prematuramente el asunto, sin dilucidar el mismo en los méritos. Con ello, le coartó al Sr. Planas la posibilidad de impugnar el alegado propósito de la expropiación, denegando la citación de aquellos testigos identificados por él como las personas con conocimiento específico sobre el aludido proyecto. De esta forma, no sólo afectó el derecho de esa parte de probar, como cualquier otro litigante, las defensas u objeciones que nuestro sistema judicial le permite levantar dentro de un procedimiento de expropiación, sino que redujo la posibilidad de que el mismo tribunal, en su día, tuviera ante sí el verdadero propósito o fin de dicha expropiación, de manera que pudiera estar en posición de determinar si el mismo era uno público.

Lo anterior no pretende prejuzgar la aludida controversia, ni mucho menos truncar el poder del Estado de expropiar o de determinar lo que constituye un fin público. Sin embargo, las alegaciones del recurrido, como las de cualquier otro litigante, deben ser probadas ante el tribunal. En virtud de ello, las alegaciones del ELA y del Sr. Planas sobre el propósito al cual se destinará la servidumbre deben ser dilucidadas en los méritos, concediendo a ambas partes el debido proceso de ley. Así como el ELA tiene derecho a descubrir prueba y citar testigos para la celebración de la vista sobre impugnación del fin público, el Sr. Planas tiene derecho a descubrir prueba y citar testigos para impugnar en dicha vista el propósito detrás de la expropiación de su finca, incluyendo cualquier prueba sobre consideraciones ajenas a un fin público, como lo sería el beneficiar intereses privados. Cualquier otra materia extraña al fin público, según hemos resuelto, sería impertinente y, por tanto, no estaría sujeta al descubrimiento de prueba.

Una vez desfilada ante el Tribunal la evidencia pertinente al verdadero fin de la expropiación, éste contará con los elementos de juicio necesarios para determinar si el mismo es uno público, independientemente de cuál éste sea. Así, se cumple con el consabido objetivo de resolver las controversias judiciales de manera justa. Entendemos, por ello, que el TPI determinó a destiempo que ninguna de las personas a las que se pretendía citar podrían aportar información significativa adicional para la resolución de la controversia de fin público.

**IV**

Por los fundamentos expuestos, y habiéndose ya expedido el auto, se revoca la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 19 de junio de 2003 y notificada el 24 de junio de 2003. El Tribunal de Primera Instancia permitirá y regulará el descubrimiento de prueba de ambas partes en cuanto al cuestionado fin público de la expropiación y celebrará una vista evidenciaria para dilucidar dicha controversia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 135**

**1.** El Sr. Xavier Planas Merced, posteriormente, señaló que el nombre correcto de su hermana es Norma Marrero Merced, y añadió que ésta no pertenecía a la Sucesión Planas Parrilla porque le vendió su participación al primero. Apéndice de los Peticionarios, pág. 12.

**2.** Entre ellos, los peticionarios solicitaron los siguientes: certificación de que el proyecto Lazo del Este se construiría al oeste de Aguirre; certificación de que las líneas de Aguirre no serían removidas de sus cimientos originales; copia de los planos, informes de viabilidad, fotos aéreas, documentos sobre la fase de estudio, notificaciones e informes de la División de Ingeniería en cuanto al impacto de dicho proyecto en varias comunidades de Trujillo Alto; informes sobre la búsqueda de alternativas; certificación de las alegadas propiedades que se pretenden proteger en cuanto al impacto económico y su legalidad; certificación de la presentación del proyecto en la Administración de Reglamentos y Permisos (ARPE); certificación preliminar de aprobación de la Junta de Planificación; y copia del montaje de datos de campo recopilado por el Agrimensor a base de fotos aéreas digitales, tanto de la ruta original como de la ruta alterna, aprobado por el Sr. Rosario y preparado por el Departamento de Estudio. Apéndice de los Peticionarios, págs. 89-90.

**3.** 32 L.P.R.A. §§ 2901 *et seq.*

**4.** *"A taking of property by eminent domain for a use which is not public is such a violation of the basic and essential features of constitutional goverment that it amounts to a taking without due process of law."* Nichols, *Op. Cit.*, Vol. 1A, § 4.7, págs. 4-32.

**5.** La Regla 58.5 de Procedimiento Civil dispone:

*"Si un demandado no tuviere objeción o defensa que interponer a la adquisición forzosa de su propiedad, podrá notificar su comparecencia, designando la propiedad en la cual él sostiene que tiene algún derecho. Subsiguientemente será notificado de todo procedimiento concerniente a esa propiedad. Si un demandado tuviere alguna defensa u objeción a la adquisición de la propiedad, notificará su contestación dentro de veinte (20) días después de haber sido notificado de la expropiación.*

*La contestación identificará a la propiedad en la cual el demandado sostiene que tiene un derecho, expondrá la naturaleza y el alcance de dicho derecho y expondrá todas sus defensas y objeciones a la adquisición de su propiedad. Un demandado renunciará todas las defensas y objeciones que no fueren así presentadas, pero en la vista de la cuestión de justa compensación hubiere o no comparecido o contestado con anterioridad a dicha vista, podrá dicho demandado ofrecer evidencia en cuanto a la cuantía de la compensación que deba pagarse por su propiedad, y podrá participar en la distribución de la suma adjudicada."*

**6.** Petición del 24 de octubre de 2002, Apéndice de los Peticionarios, págs. 3-10.

**7.** Oposición a Petición presentada el 26 de febrero de 2003, Apéndice de los Peticionarios, págs. 16-20.

**8.** Posteriormente, dicha vista fue reseñalada para el 10 de junio de 2003. Orden del 14 de mayo de 2003, Apéndice de los

Peticionarios, pág. 96.

**9.** Solicitud Urgente de Expedición de Citaciones a Testigos, Apéndice de los Peticionarios, págs. 74-75.

**10.** Moción de Réplica a la Solicitud Urgente de Citaciones Testigos, Apéndice de los Peticionarios, págs. 91-93.

**11.** Orden de 22 de mayo de 2003, Apéndice de los Peticionarios, pág. 105.

**12.** Resolución de 19 de junio de 2003, Apéndice de los Peticionarios, págs. 113-118.

**13.** Entre estos empleados, el Sr. Planas identificó en sus escritos al Ing. Rodríguez Fonseca y al Sr. Hiram Ruiz, los cuales el primero intentó citar a la vista de impugnación sin tener éxito. Véase Oposición a Petición y Solicitud de *Injunction* Preliminar y Permanente, Apéndice de los Peticionarios, págs. 16-20 y 34-41.

**14.** Véase, *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 459-460 (1985); 22 L.P.R.A. § 193.

**15.** *Id.*, pág. 460.

**16.** 22 L.P.R.A. § 193.

**17.** 22 L.P.R.A. § 196(n) y (o).

**18.** 22 L.P.R.A. § 196(p).

**19.** El ELA, mediante carta fechada el 2 de junio de 2003, solicitó al Sr. Planas fotocopia de todos los documentos que éste pretendía presentar en la vista sobre impugnación del fin público y el nombre de los testigos que iba a utilizar, con un resumen de lo que iban a declarar en dicha vista. Carta del 2 de junio de 2003, suscrita por la Lcda. Lourdes Morales Solís, abogada de la División de Expropiación del Departamento de Justicia. Apéndice de los Peticionarios, pág. 102.

**20.** Para mantener la pureza y el control de esta etapa procesal, las partes tiene a su disposición las órdenes protectoras al amparo de la Regla 23.2 de Procedimiento Civil. De manera particular, esta regla permite que el tribunal emita una orden protectora para que no se lleve a cabo el descubrimiento de ciertas materias o que se limite el alcance de las mismas. Regla 23.2 (d) de Procedimiento Civil. 32 L.P.R.A. Ap. III.