Ortiz Carrión, Juez Ponente
*1187 TEXTO COMPLETO DE LA SENTENCIA
La Administración de Terrenos de Puerto Rico solicita la revisión de dos resoluciones interlocutorias en las cuales el Tribunal de Primera Instancia, Sala de San Juan: 1) permitió a la parte con interés impugnar el fin público de la expropiación durante la vista en su fondo; y 2) determinó que procedía enmendar la resolución mediante la cual originalmente el tribunal ordenó la inscripción de las fincas expropiadas a favor del Departamento de Recursos Naturales, para inscribirlas a favor de la Administración de Terrenos.
En su recurso, la Administración de Terrenos plantea que el tribunal recurrido erró al permitirle a la parte con interés impugnar el fin público de la expropiación, pues el récord establece que existe un fin público; la parte con interés no puede impugnar el fin público porque retiró los fondos consignados como compensación, porque relitigar este asunto es contrario a la doctrina de la ley del caso y no existe nueva prueba para dejar sin efecto la resolución donde se determinó que la parte con interés no puede impugnar el fin público. Plantea, además, que el tribunal recurrido erró al decretar la expropiación a favor de la Administración de Terrenos y no a favor del Departamento de Recursos Naturales y Ambientales.
Antes de dilucidar estos señalamientos, hacemos un resumen del trámite procesal en que se suscita la controversia.
El 4 de diciembre de 1995, la Administración de Terrenos radicó una Petición de Expropiación Forzosa para adquirir dos fincas ubicadas en el Municipio de Cabo Rojo para uso y beneficio del Departamento de Recursos Naturales y Ambientales. Como parte de los documentos incluidos con la Petición, se presentó copia de la Resolución Núm. 1204 de la Junta de Directores de la Administración de Terrenos, en la cual se aprobó la adquisición de las fincas en cuestión. En la Resolución se estableció que se solicitaba la adquisición de los terrenos para facilitar el desarrollo turístico del proyecto conocido como Marina Boquerón; que la adquisición de los terrenos se haría en cumplimiento con un Plan de Mitigación que, para hacer viable el Proyecto Marina de Boquerón, requería dedicar a reserva natural a perpetuidad las fincas a ser expropiadas.
Mediante resolución del 20 de diciembre de 1995, el tribunal recurrido dictó resolución en la cual ordenó que el título de dominio quedara investido en el Departamento de Recursos Naturales y Ambientales.
El 1 de marzo de 1996, la parte con interés presentó Moción Sobre Objeción, Retiro y Consolidación de Casos en la cual solicitó el retiro de los fondos bajo protesta, por considerar que la cantidad consignada como justa compensación debía ser mayor.
El 2 de julio de 1997, durante una vista de conferencia con antelación al juicio, la parte con interés manifestó que habría de citar a varios funcionarios públicos para testificar en la vista en su fondo. El 31 de octubre de 1997, la Administración de Terrenos presentó Moción de Desestimación en Relación a la Impugnación del Fin Público y Memorando de Derecho en la cual señaló que en la vista del 2 de julio, por primera vez, la parte con *1188 interés impugnó el fin público de la expropiación basándose en que la expropiación se había realizado para que la corporación B.L.M. Resort, desarrolladora del proyecto privado conocido como Marina Boquerón, cumpliera con un requisito de mitigación del Cuerpo de Ingenieros de los Estados Unidos. Planteó que la parte con interés está impedida de cuestionar el fin público de la expropiación por haber retirado los fondos consignados y por tratarse de una defensa que se renunció por no ser presentada a tiempo. Planteó, además, que existe un fin público en la expropiación de las fincas, que las mismas no van a transferirse, sino que van a ser dedicadas a perpetuidad a reserva natural y refugio de aves, lo que constituye un fin público y beneficio para la comunidad.
En diciembre de 1997, la parte con interés presentó su moción de réplica. En particular señaló que:
“La parte con interés le informó al Honorable Tribunal en corte abierta que había obtenido recientemente prueba que la peticionaria había expropiado la finca de la parte con interés para beneficio de B.L.M. Resort Corp., o sea que la parte peticionaria actuó como testaferro de dicha corporación. Que el procedimiento por el cual se había solicitado a la Junta de Planificación la expropiación de la finca de la parte con interés, estaba viciado debido a que se había solicitado permiso para expropiar indicando un fin público cuando en realidad fue para beneficio particular. ” (Enfasis suplido.)
Solicitó que, en virtud de la Regla 49.2, se deje sin efecto la resolución del 20 de diciembre de 1995 en la cual se decretó la expropiación forzosa de las fincas a favor del Departamento de Recursos Naturales y Ambientales, por haber descubierto nueva prueba y por fraude al Tribunal. Expresó:

“La parte con interés inmediatamente que se enteró que la expropiación era para que una persona privada-pudiera cumplir con e (sic) el plan de mitigación, solicitó dentro del término dispuesto por ley, que se dejara sin efecto el procedimiento de expropiación. [..JLa parte con interés entiende que la parte peticionaria sabía una (sic) año antes de radicar la Petición que la expropiación era para beneficiar a una persona privada y no se lo notificó al tribunal, haciéndole creer al Tribunal que el fin público de la expropiación era para el beneficio de DRN, lo que es contrario a la realidad. ”

Luego de múltiples trámites procesales relacionados con esta controversia, el 20 de mayo de 1999, el tribunal recurrido emitió resolución en la cual concluyó que no procede la impugnación del fin público de la expropiación. Resolvió que:

“En el caso de autos, no priva de su carácter de uso público a la expropiación el hecho de que el plan de mitigación se le requiera a una corporación privada. Es un proyecto que beneficiará al pueblo de Puerto Rico, pues se cumple con el programa de industrialización de la isla y a su vez protege nuestro ambiente. Entendemos que para la realidad que vive nuestro país donde cada día quedan menos bosques, manglares y fauna en peligro de extinción, un plan de mitigación es loable y cuenta con todo el respaldo de este tribunal. ”

Resolvió además, que una parte que solicita el retiro de la suma consignada como justa compensación, no puede continuar cuestionando que la expropiación no es para un fin público, y que por haber transcurrido más de 6 meses desde que se dictó la resolución decretando la expropiación a favor del Departamento de Recursos Naturales, no procedía una moción bajo la Regla 49.2. Ninguna de las partes solicitó revisión de dicha resolución, por lo que se constituyó en la ley del caso sobre este particular.
Posteriormente, el 18 de noviembre de 1999, la parte con interés solicitó una orden para la producción de documentos y tomar deposiciones a varios funcionarios públicos. La Administración de Terrenos se opuso a este descubrimiento por entender que con él se pretendía impugnar nuevamente el fin público de la expropiación y este asunto ya había sido resuelto por el tribunal. El 24 de febrero de 2000, el tribunal recurrido resolvió: “Vista la Moción presentada por la parte con interés solicitando la toma de deposición y reproducción de documentos, el Tribunal la declara NO HA LUGAR, a tenor con los señalamientos hechos en *1189 la Resolución emitida el 20 de mayo de 1999. Se ordena a la parte se sujete a la misma.
El 29 de febrero de 2000 se celebró una vista en la cual la parte con interés indicó al tribunal que utilizaría ciertos testigos. Por entender que se trataba de un nuevo intento por impugnar el fin público de la expropiación, el 10 de marzo de 2000, la Administración de Terrenos presentó una Moción Solicitando Orden Protectora, para que el tribunal impida toda citación de testigos o petición de prueba que lleve a volver a litigar el fin público. A estos efectos, el 11 de abril de 2000, el tribunal recurrido dictó resolución en la cual ordenó: “Como se pide. La controversia en cuanto a fin público fue adjudicada el 20 de mayo de 1999 mediante Resolución final y firme, por lo que no había impedimento para dictar la misma. La única controversia pendiente es la adjudicación de la justa compensación, así lo indicó el Tribunal el 24 de febrero de 2000. ”
Dos años después, tras varios trámites adicionales, en o para el 3 de enero de 2002, la parte con interés presentó una Solicitud de Subpoena Duces Tecum y Orden para Deponer dirigida al Departamento de Recursos Naturales, a la Junta de Planificación, la Administración de Reglamentos y Permisos y el Sr. Miguel Acevedo Coll, presidente de B.L.M. Resort Corp., en la cual solicita los documentos de los expedientes administrativos relacionados con el Proyecto Marina Boquerón. El 15 de enero de 2002, notificada el 25 de enero, el tribunal recurrido emitió orden en la que declaró con lugar la solicitud de la parte con interés. La Administración de Terrenos presentó su moción en oposición planteando que la parte con interés pretendía nuevamente relitigar el fin público de la expropiación, asunto ya resuelto por el tribunal desde el 20 de mayo de 1999. Evaluadas la moción de Subpoena Duces Tecum y la oposición de la Administración de Terrenos, el 21 de febrero de 2002, el tribunal recurrido resolvió: “este Tribunal, amparándose en los fundamentos que expone la parte peticionaria [Administración de Terrenos] en su moción en oposición, resuelve declarar No Ha Lugar la moción de la parte con interés antes mencionada. ”
El 9 de agosto de 2004, la parte con interés presentó una Solicitud de Reconsideración o que Deje Sin Efecto la Resolución de 20 de mayo de 1999, por Descubrir Nueva Evidencia. Planteó que había descubierto nueva evidencia que la Administración de Terrenos “intencionalmente ocultó con el propósito de defraudar a la Parte con Interés y al Tribunal y en la admisión hecha por el Ledo. Rafael Fernández, el día 23 de marzo de 2004, para récord, que la finalidad de la presente expropiación es para el plan de mitigación de (sic) proyecto millonario Marina Boquerón, utilizando fondos públicos para beneficiar y ayudar al desarrollador millonario privado." Solicitó que el tribunal deje sin efecto la resolución del 20 de mayo de 1999, ya que la Administración de Terrenos ocultó la realidad de la finalidad de la expropiación. El 8 de septiembre de 2004, la Administración de Terrenos presentó su oposición planteando que la alegada nueva evidencia estuvo a disposición de la parte con interés desde que se radicó la demanda de expropiación, que no existe nueva evidencia, por lo que procede sostener la resolución del 20 de mayo de 1999. Durante una conferencia sobre el estado de los procedimientos celebrada el 28 de octubre de 2004, el tribunal recurrido acogió la solicitud de celebrar una vista evidenciaría durante la cual se permitirá a la parte con interés impugnar el fin público. Además, el tribunal recurrido determinó que las fincas debían inscribirse en el Registro de la Propiedad a nombre de la Administración de Terrenos y no del Departamento de Recursos Naturales. El 12 de noviembre de 2004, la Administración de Terrenos solicitó reconsideración, la cual fue declarada sin lugar. El 18 de noviembre de 2004, el tribunal recurrido dictó resolución enmendada en la cual corrige la resolución dictada el 20 de diciembre de 1995 a los fines de corregir y ordenar la inscripción registral de las fincas a favor del Departamento de Recursos Naturales.
Inconforme, la Administración de Terrenos presentó el recurso que nos ocupa. Posteriormente, la Administración de Terrenos presentó una Moción en Auxilio de Jurisdicción para Solicitar Paralización de los Procedimientos en Instancia Relativos a la Impugnación de Fin Público por el fundamento de que, con posterioridad a la presentación del recurso de certiorari, el tribunal recurrido dictó dos órdenes declarando con lugar una moción en solicitud de orden para citar testigos para vista y una solicitud de subpoena duces tecum y orden, presentadas por la parte con interés y dirigidas a impugnar el fin público. Luego de varios trámites *1190 procesales, este Tribunal ordenó la paralización de todos los procedimientos ante el tribunal recurrido relacionados con la impugnación del fin público de la expropiación. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.
II
El Art. II, sección 9 de nuestra Constitución establece que no se tomará o perjudicará, la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. Const. E.L.A., Art. II, sec. 9, 1 L.P.R.A. Igualmente, instituye el derecho a que ninguna persona sea privada de su propiedad sin el debido proceso de ley. Const. E.L.A., Art. II, sec. 7.
Reiteradamente se ha dicho que el derecho de expropiación del Estado es un atributo inherente y necesario de la soberanía y es superior a todos los derechos de propiedad. López v. Autoridad de Energía Eléctrica, 2000 J.T.S. 126. Sin embargo, este poder del Estado está limitado por la exigencia del pago de una justa compensación, que el objeto expropiado sea para un fin público y que se siga el procedimiento establecido por ley. Culebra Enterprises Corp. v. E.L.A., 127 DPR 943 (1991).
Es doctrina conocida que cuando la Asamblea Legislativa, quien ejerce el poder de expropiación forzosa del Estado, bien por sí o en forma delegada, hace la determinación de utilidad pública o interés público, resulta poco menos que imperceptible la facultad de los tribunales para contradecir esa determinación. Una vez que la declaración legislativa o del organismo delegado sea de utilidad pública, no incumbe a los tribunales intervenir con la manera y medios que la legislatura o sus organismos delegados escogen para ejercer el poder de expropiar, ni con la selección que hace de los bienes a ser expropiados. Estado Libre Asociado v. Rosso, 95 DPR 501 (1967).
El derecho a declarar qué uso se considera público corresponde primeramente a los organismos del Estado. Se presume que un uso es público si así ha sido declarado por dichos organismos. Estado v. Fajardo Sugar Co., 79 D.P.R. 321, 334 (1956).
Cuando una agencia pública incoa un procedimiento de expropiación forzosa y establece que el uso para el cual se destina la propiedad expropiada constituye un fin público, los tribunales no revisarán las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad del terreno a expropiarse, ni la necesidad o lo adecuado del sitio en particular que se expropia. M. Mercado e Hijos v. Tribl. Superior, 85 D.P.R. 370 (1962).
Para que un fin constituya un “uso público” dentro del contexto de la ley, no es esencial que toda la comunidad perciba directamente o goce de todo el beneficio. Al hacer esta determinación, deben considerarse no solamente las necesidades presentes, sino también aquéllas que razonablemente puedan ser anticipadas para el futuro. Estado v. Fajardo Sugar Co., supra.
El Tribunal Supremo de Puerto Rico ha resuelto que una parte que solicita el retiro de la suma consignada por el Estado en el Tribunal como justa compensación de la propiedad privada expropiada y acepta el correspondiente cheque, no puede continuar litigando el derecho del Estado para expropiar; defensa de que la expropiación no es para un fin público y su derecho se limitará a discutir si la cuantía de la indemnización es la justa compensación por los terrenos expropiados. Mercado v. Tribunal Superior, 85 D.P.R. 370 (1962).
Por otra parte, la doctrina de la ley del caso es una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin. Srio. del Trabajo v. Tribunal Superior, 95 D.P.R. 136 (1967). Esta doctrina establece que un tribunal debe evitar alterar decisiones previamente emitidas a menos que concluya que lo resuelto anteriormente es claramente erróneo y puede causar una grave injusticia. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217 (1975). Cuando la decisión previamente adoptada resulta equivocada *1191 y mantenerla en vigor puede causar una grave injusticia, el tribunal no está impedido de dejarla sin efecto, máxime si así lo requiere la integridad del proceso judicial. Sobre esto véase Noriega v. Gobernador, 130 D.P.R. 919 (1992), y casos allí citados.
Como es sabido, la facultad de expropiar recae enteramente en el poder del Estado. Los ciudadanos de Puerto Rico no tienen derecho alguno a exigirle al Estado que expropie un terreno para su beneficio. El Estado tiene facultad para considerar el pedido, mas tiene amplia discreción para acceder o denegar la solicitud de expropiación. En la situación de autos, la Administración de Terrenos y el Departamento de Recursos Naturales determinaron que existe un fin público que amerita la expropiación de las fincas en cuestión. Aunque un ciudadano puede realizar esfuerzos encaminados a solicitar dicha expropiación, no obstante, no tiene derecho alguno a que finalmente se realice, puesto que es al Estado a quien únicamente le corresponde tomar dicha determinación. Al evaluar la pmeba presentada, el tribunal de Primera Instancia determinó que la determinación de las agencias fue correcta y que existe un fin público. No vemos razón alguna para variar esta determinación, pues las circunstancias que el tribunal tomó en consideración en aquel momento, a saber, que la expropiación se inició a petición de un particular, se han mantenido inalteradas desde la radicación de la petición de expropiación.
III
La Administración de Terrenos de Puerto Rico, creada por la Ley Núm. 13 de 16 de mayo de 1962, 23 L.P. R.A., §311, tiene amplias facultades para ejercer el poder de expropiación forzosa del Estado. La ley orgánica de la Administración en su Artículo 7 le confiere, entre otros, los siguientes poderes:

“(x) Adquirir cualquier derecho, interés o servidumbre en cualquier propiedad para: propiciar el desarrollo, aprovechamiento y conservación de área abiertas en su estado natural para proteger los cuerpos de aguas; proteger al público de los efectos de las inundaciones; conservar los suelos y bosques; preservar la belleza de los parajes destinados a uso público, incluyendo las áreas verdes y los parques públicos; y facilitar el uso y desarrollo de áreas reservadas para proyectos de interés público, especialmente los relacionados con la salud, de seguridad y el bienestar de los habitantes;

(y) Llevar a cabo convenios con el Estado Libre Asociado y sus agencias para adquirir para éstos propiedad inmueble; vender propiedad inmueble de éstos o intervenir en o hacer el desarrollo de programas en cuanto a dicha propiedad, todo ello con sujeción a los estatutos que fijan la gestión oficial de dichas agencias. A tales fines se autoriza a las partes en estos convenios a hacer las transferencias de fondos que sean necesarias. ”

Del Convenio de Servicios suscrito entre la Administración de Terrenos y el Departamento de Recursos Naturales, cláusula novena, surge que la Administración solicitará durante el procedimiento de expropiación que el Tribunal Superior ordene, la inscripción de la propiedad directamente al Departamento de Recursos Naturales.
La Administración utilizó el poder de expropiación forzosa que le confiere la ley para adquirir las fincas para el Departamento de Recursos. Naturales sin necesidad de que fuera esa agencia sea parte en el pleito. La Resolución de 20 de noviembre de 1995 que indica que el título de las fincas quedaría investido en el Departamento de Recursos Naturales obedece a lo pactado y está apoyada por la ley, por lo que no constituye error y debe mantenerse.
IV
Por los fundamentos antes expuestos, se expide el auto solicitado y se deja sin efecto aquella parte de la resolución recurrida en que se permite que la parte con interés impugne el fin público de la expropiación durante la vista en su fondo; se deja sin efecto la resolución enmendada del 18 de noviembre de 2004; y se *1192 devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones