

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Municipio Autónomo de Guaynabo representado por su Alcalde, Héctor O'Neill García<br><br>    Peticionarios<br><br>               v.<br><br>Adquisición de 197.8817 metros cuadrados de terreno radicados en la Bda. Mainé Barrio los Frailes, Guaynabo, PR, perteneciente a Andeli González, John Doe y Richard Doe<br><br>    Recurridos | Certiorari<br><br>2010 TSPR 220<br><br>180 DPR ____ |
| --- | --- |

Número del Caso: CC-2009-16

                CC-2009-25


Fecha: 2 de diciembre de 2010

Tribunal de Apelaciones:

                Región Judicial de San Juan-Panel I

Juez Ponente:

                Hon. Luis R. Piñero González

Abogados de la Parte Peticionaria:

                Lcdo. Rafael Alonso Alonso
                Lcdo. Rafael Quiñones Vigo


Abogados de la Parte Recurrida:

                Lcda. Myrta Morales Cruz
                Lcda. Eva Prados Rodríguez
                Lcdo. Luis Torres Asencio
                Lcdo. Rafael Espasas García


Materia: Expropiación Forzosa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García<br>        Peticionarios<br><br>                v.<br><br>Adquisición de 197.8817 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a Andeli González, John Doe y Richard Doe<br>        Recurridos | CC-2009-16 |
| Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García<br>        Peticionario<br><br>                v.<br><br>Adquisición de 468.7202 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a Milagros Cruz Gotay, John Doe y Richard Doe<br>        Recurrida | Cons. |
| Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García<br>        Peticionario<br><br>                v.<br><br>Adquisición de 160.3609 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a José Cruz Gotay, John Doe y Richard Doe<br>        Recurrida | |
| Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García<br>        Peticionario | CC-2009-25 |

v.
Adquisición de 2,595.1893
metros cuadrados de terreno
radicados en la Bda. Mainé,
Barrio Los Frailes, Guaynabo,
PR, perteneciente a Rafael
Oliveras Ramos, Ana Molina,
First Bank Puerto Rico,
Citibank, N.A., John Doe y
Richard Doe
            Recurrida

Opinión del Tribunal emitida por la Juez Asociada señora
Rodríguez Rodríguez

San Juan, Puerto Rico, a 2 de diciembre de 2010

El Municipio Autónomo de Guaynabo acude ante nosotros mediante los recursos CC-2009-16 y CC-2009-25. Éstos presentan controversias relacionadas al procedimiento especial de expropiación forzosa. Específicamente, se nos solicita que aclaremos si el Estado tiene que establecer la constitucionalidad del uso público de la expropiación que solicita ante el tribunal o, por el contrario, si la parte con interés sobre el bien expropiado tiene la carga de probar la inexistencia de dicho uso público. Asimismo, debemos resolver si el Municipio Autónomo de Guaynabo tiene que contar con una consulta de transacción pública aprobada por la Junta de Planificación antes de realizar una expropiación forzosa. Por ambos recursos tratar controversias similares, el 8 de mayo de 2009 expedimos y consolidamos los mismos. Veamos los hechos pertinentes.

I.

En noviembre de 2005 y marzo de 2006, el Municipio Autónomo de Guaynabo (en adelante "el Municipio") presentó en el Tribunal de Primera Instancia varias peticiones de expropiación forzosa para adquirir ciertos terrenos en la Barriada Mainé, ubicada en el Barrio Frailes del mismo municipio.[1]  Junto a cada una de las peticiones presentó también un legajo que incluía:  1) un documento con la descripción de cada inmueble, la compensación a consignarse, y las personas con interés; 2) una moción solicitando la adquisición y entrega material de la propiedad; y 3) una declaración del alcalde de la ciudad.  Sobre el uso público de la expropiación, en dicha declaración el Municipio expresó:

> . . . La adquisición de la propiedad objeto de este procedimiento es de necesidad y utilidad pública, ya que cumple con el propósito del [Municipio] y la Comunidad en general, realizar política pública y además, para la realización de cualesquiera programas encaminados a lograr los propósitos de la ley, creando los Municipios ....
> El interés que el [Municipio] se propone adquirir en la(s) referida(s) propiedad(es) para el fin público indicado es el de un título de dominio absoluto . . . para llevar a cabo el Proyecto de Vivienda de Interés Social **"Villas de Mainé, Guaynabo, PR"**.
> El declarante, así como la Asamblea Municipal de Guaynabo, en armonía con la facultad que para ello le ha sido conferida por las leyes . . . ha determinado que la adquisición de la(s) propiedad(s) (sic) objeto de esta acción es de utilidad pública, necesaria y conveniente para el proyecto **"Villas de Mainé, Guaynabo, PR"**. (Énfasis en el original).

_____

[1] La Legislatura Municipal había autorizado previamente las referidas expropiaciones mediante las Ordenanzas Municipales Núm. 21 y 229, Serie Núm. 2002-03; y Núm. 13, 50, 61 y 63, Serie 2005-06.

Los propietarios de los terrenos que el Municipio interesaba adquirir (en adelante "los recurridos") contestaron las peticiones de expropiación impugnando su uso público, entre otros asuntos.

A.

En el caso CC-2009-25, los recurridos presentaron ante el foro primario una *Moción de Impugnación del Fin Público* en la cual alegaron que la petición de expropiación carecía de una consulta de transacción pública aprobada por la Junta de Planificación,[2] y una declaración específica de uso público. Cumpliendo con una orden del tribunal, el Municipio presentó una réplica informando que el fin público de la expropiación era la construcción de un proyecto público de vivienda con interés social. Con el objetivo de aclarar dicha finalidad el Municipio señaló:

> El proyecto que se desarrolla en la Comunidad Mainé de Guaynabo, dirigido a ofrecer alternativas viables de vivienda a familias de **escasos recursos económicos** residentes en dicha ciudad, presenta como objetivos principales entre otros, aumentar la disponibilidad de viviendas nuevas, seguras, sanitarias y económicamente asequibles para familias de escasos recursos económicos y fomentar el desarrollo urbano de la ciudad mejorando la calidad de vida de los residentes.
> La obra pública, identificación que el gobierno hace sobre las necesidades de una comunidad y la manera de satisfacerlas, para la que se expropia en este caso, es un desarrollo de viviendas de interés social que establece en la Comunidad Mainé un proyecto modelo que inicia la renovación urbana de todo el sector, política

---

[2] El 15 de diciembre de 2006, este Tribunal denegó expedir un auto de *certiorari* para revisar una determinación del Tribunal de Apelaciones en la que éste sostuvo que el Municipio de Guaynabo no venía obligado a presentar ante el tribunal una consulta de transacción pública aprobada por la Junta de Planificación como parte del procedimiento de expropiación forzosa.

pública de la administración municipal dirigida a la rehabilitación y renovación de la infraestructura y calidad de vida de los residentes de la comunidad Mainé de Guaynabo. (Énfasis en el original).

El Municipio también solicitó al foro primario que le permitiera desfilar prueba sobre dicho fin público en una vista que estaba próxima a celebrarse. Posteriormente, los recurridos presentaron ante el Tribunal de Primera Instancia una *Moción Solicitando Desestimación de la Petición de Expropiación Forzosa por Inconstitucionalidad del Fin Público*, en la cual arguyeron que el proyecto de vivienda de interés social alegado por el Municipio como fin público era inconstitucional. Ello debido a que el Manual de Criterios para el otorgamiento de Subsidios de Vivienda para Hogar Propio y Seguro en el Municipio de Guaynabo de 1997 (en adelante "Manual de Subsidios de Vivienda"), que alegadamente utilizaría el Municipio para seleccionar los beneficiarios del proyecto de vivienda, era inconstitucional de su faz por negar sus beneficios a individuos que no son ciudadanos americanos y por imponer condiciones contrarias a la Constitución del Estado Libre Asociado de Puerto Rico,[3] *infra*.

---

[3] Entre los requisitos de elegibilidad que establece la sección 4.001 del citado Manual están:
"....
b.     Ser ciudadano de los Estados Unidos de Norte América.
.....
k.     Aprobada la tasación de su propiedad por el C.R.I.M. y notificada dicha tasación por el Municipio al residente dueño de la propiedad para éste poder acogerse al programa de subsidio deberá, . . . informarle por escrito al Municipio

El Tribunal de Primera Instancia emitió una resolución, el 25 de septiembre de 2006, en la cual declaró no ha lugar la moción que impugnaba la constitucionalidad del fin público del proyecto del Municipio, y señaló una próxima vista para pasar juicio sobre el fin público de la expropiación. El tribunal advirtió a los recurridos que de no estar preparados cuando se celebrara la siguiente vista, desestimaría su impugnación sobre el fin público y continuaría con los procedimientos de la expropiación.

El 27 de octubre de 2006, los recurridos acudieron al Tribunal de Apelaciones mediante recurso de *certiorari*. Estando pendiente dicho recurso ante el foro apelativo intermedio, y sin que el Tribunal de Primera Instancia hubiese celebrado la vista sobre la impugnación del fin público de la expropiación, el 7 de marzo de 2007 el Municipio solicitó al foro primario que ordenara a los recurridos desalojar las propiedades objeto de expropiación. Dicho foro concedió la petición, ordenando el lanzamiento de los recurridos el 15 de marzo de 2007. Ante tal suceso, el 29 de marzo del mismo año, éstos presentaron una moción en auxilio de jurisdicción al

_____

que acepta el programa y está dispuesto a cumplir con todas y cada una de las condiciones impuestas en el plan de subsidio;

l.    Los residentes que no acepten la tasación debidamente endosada por el C.R.I.M. y por tal razón el Municipio tenga que expropiarle la propiedad, no serán elegibles para participar en el programa. Dándose esta situación el Municipio iniciará el proceso [de] expropiación forzosa, depositará la suma por la cual el C.R.I.M. tasó la propiedad como justa compensación de la misma y el dueño podrá continuar el procedimiento en el Tribunal conforme a derecho."

Tribunal de Apelaciones, el cual ordenó la paralización de los procedimientos en el foro recurrido. Así las cosas, luego de examinar el caso en sus méritos, dicho tribunal dictó sentencia revocando tanto la resolución como la orden del foro primario y decretó que se celebrara una vista evidenciaria para dilucidar el uso público del proyecto. Asimismo puntualizó que el Municipio debía presentar prueba sobre la utilidad y necesidad del fin público, mientras que los recurridos tendrían derecho a desfilar prueba con miras a impugnar dicho fin público.

De la referida sentencia acude ante nosotros el Municipio mediante recurso de *certiorari* y alega que el Tribunal de Apelaciones erró al determinar que corresponde al Estado en primera instancia probar la validez, necesidad y viabilidad del fin público de la expropiación.

### B.

Por otro lado, en el caso CC-2009-16, los recurridos también presentaron ante el foro primario dos mociones de desestimación. Al igual que en los procedimientos descritos anteriormente, una de las mociones impugnaba la constitucionalidad del fin público de la expropiación por motivo del Manual de Subsidios de Vivienda que alegadamente utilizaría el Municipio para brindar sus beneficios; mientras la segunda moción requería la presentación de una consulta de transacción pública aprobada por la Junta de Planificación.

En este procedimiento el Tribunal de Primera Instancia celebró una vista argumentativa sobre impugnación de fin

público.   Luego de escuchar los argumentos de las partes,
el foro primario declaró no ha lugar ambas mociones de
desestimación y expresó en su resolución del 10 de octubre
de 2006: "Que habiendo la parte con interés desfilado la
prueba[4] en cuanto a la impugnación al fin público, entiende
[el tribunal] que la misma no es suficiente para impugnar
el fin público de una vivienda de carácter social que se
han (sic) presentado en el caso."   Tal resolución fue
notificada el 5 de septiembre de 2008.

Inconformes con tal determinación, el 6 de octubre de
2008, los recurridos acudieron ante el Tribunal de
Apelaciones, quien dictó sentencia revocando la resolución
del foro inferior y ordenó al Municipio presentar evidencia
sobre la utilidad y necesidad del fin público del proyecto
propuesto para la expropiación.   Asimismo, el foro
apelativo intermedio concluyó que al amparo del Reglamento
de Procedimientos Adjudicativos de la Junta de
Planificación, *infra*, y la Orden Ejecutiva Núm. 4 del 20 de
enero de 2004, *infra*, el Municipio tenía que presentar en
el tribunal inferior una "consulta de ubicación sobre
transacción pública" debidamente autorizada por la Junta de
Planificación para cada uno de los inmuebles objeto de
expropiación.

---

[4] Advertimos que aunque el Tribunal de Primera Instancia menciona la "prueba" de los recurridos, en realidad debió hacer referencia a sus "argumentos" ya que se trataba de una conferencia sobre el estado de los procedimientos a la cual sólo comparecieron los abogados de las partes a discutir sus respectivas mociones.

Nuevamente, acude ante nosotros el Municipio mediante recurso de *certiorari* y alega que el Tribunal de Apelaciones erró al determinar que corresponde al Estado en primera instancia probar la validez, necesidad y viabilidad del fin público de la expropiación. Igualmente impugna el requerimiento de presentar como parte de su evidencia una consulta aprobada por la Junta de Planificación.

Habida cuenta de que los recursos fueron expedidos y consolidados, así como examinados los alegatos de las partes, pasamos a evaluar el derecho aplicable.

II.

A.

El derecho fundamental a disfrutar de la propiedad privada es uno expresamente reconocido en nuestra Constitución. Art. II, Sec. 7, Const. E.L.A., 1 L.P.R.A. Empero, en repetidas ocasiones hemos aclarado que éste no es absoluto, pues está sujeto al poder inherente del Estado de establecer restricciones sobre la propiedad de los ciudadanos. *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, res. el 24 de julio de 2008, 2008 T.S.P.R. 128, 174 D.P.R. __ (2008); *Culebra Enterprise v. E.L.A.*, 127 D.P.R. 943 (1991); *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *E.L.A. v. Rosso*, 95 D.P.R. 501 (1967).

Un ejemplo de este poder inherente es la facultad del Estado para adquirir la titularidad de bienes privados a través de la expropiación forzosa, también conocida como dominio eminente. *Aut. Carreteras v. 8,554.741 m/c I*, 172 D.P.R. 278, 291 (2007). *Véase también*, *Estado v. Fajardo*

*Sugar Co.*, 79 D.P.R. 321 (1956). Sin embargo, esta facultad encuentra límites en nuestra Constitución mediante una importante garantía, a saber, que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. E.L.A., 1 L.P.R.A. Cónsono con la citada protección constitucional, el artículo 1930 del Código Civil establece que "[n]adie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley". 31 L.P.R.A. sec. 1113.

De otra parte, la Asamblea Legislativa puede ejercer su autoridad de expropiación directamente o delegándola en otras entidades o funcionarios públicos. 32 L.P.R.A. secs. 2902, 2905; *M. Mercado e Hijos v. Tribunal Superior*, 85 D.P.R. 370, 376 (1962). A tenor con ese principio, la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, otorgó a los municipios el poder de realizar expropiaciones forzosas dentro de sus límites territoriales por cuenta propia o a través del Gobernador de Puerto Rico, sujeto a las leyes generales y órdenes ejecutivas aplicables. 21 L.P.R.A. secs. 4051, 4453.

Ante la normativa ya reseñada, hemos reiterado que cuando el Estado o una entidad designada por éste pretenden adquirir la propiedad de una persona mediante dicho poder inherente, tienen que seguir el procedimiento dispuesto en

la Ley de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec. 2901 *et seq.*, y la Regla 58 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 58. *Véanse*, *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, *supra*; *E.L.A. v. Sociedad Civil Agrícola e Industrial*, 104 D.P.R. 392 (1975); *Esteves v. Rabell*, 36 D.P.R. 130 (1926).

Tanto la Ley de Expropiación Forzosa como la Regla 58 requieren la presentación de una demanda o petición en el tribunal para comenzar el procedimiento judicial de expropiación. 32 L.P.R.A. sec. 2905; Regla 58.3, *supra*. Junto a la petición de ordinario se presenta un legajo de expropiación que incluye, entre otros documentos, una declaración de adquisición y entrega material de la propiedad. *A.C.T. v. Iñesta*, 165 D.P.R. 891, 902 (2005). Si la declaración cumple con todos los requisitos dispuestos en la Ley de Expropiación Forzosa y se deposita en el tribunal la compensación estimada, el título de dominio queda entonces investido en la entidad que solicitó la expropiación. 32 L.P.R.A. sec. 2907. *Véanse además*, *A.C.T. v. Iñesta*, *supra*, págs. 902-03; *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961, 971 (1953); *Pueblo v. Registrador*, 70 D.P.R. 260 (1949). Desde ese instante el tribunal puede fijar el término y las condiciones bajo las cuales los poseedores de los bienes expropiados deberán entregar la posesión material de los mismos al demandante. 32 L.P.R.A. sec. 2907.

Ahora bien, aunque el procedimiento de expropiación es uno de naturaleza *in rem*, al inicio del pleito el Estado tiene la obligación de acumular como demandados a las personas que tengan un interés en la propiedad y "a la sazón se conozcan". Regla 58.3(b), s*upra*; 32 L.P.R.A. sec. 2905; *A.C.T. v. Iñesta*, *supra*, pág. 904. Posteriormente, pero siempre antes de celebrarse cualquier vista sobre la justa compensación, el Estado tendrá que traer al pleito aquellas personas con interés sobre la propiedad que se conozcan luego de realizar diligencias razonables en el Registro de la Propiedad. Regla 58.3(b), s*upra*; *A.C.T. v. Iñesta*, *supra*, pág. 904; *Pueblo v. McCormick, Alcaide & Co.*, 78 D.P.R. 939 (1956).

Una vez el titular de dominio es debidamente notificado del procedimiento de expropiación, éste tiene la oportunidad de presentar una contestación ante el tribunal y levantar las defensas y objeciones que tenga tanto sobre el "carácter público del uso a que se destinará la propiedad, como a la cuantía declarada como justa compensación". *A.C.T. v. 780,6141m$^2$*, 165 D.P.R. 121, 133 (2005). *Véanse también* Regla 58.5, *supra*; J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publ. JTS, Tomo II, 2000, pág. 1082. Cabe aclarar que los reclamos respecto al fin público y a la justa compensación que presente la parte demandada en su contestación, no impedirán que el Estado obtenga provisionalmente el título y la posesión material de la propiedad una vez presente la declaración de adquisición y entrega material mencionada

anteriormente. No obstante, el dominio que así adquiere el Estado,

> no es de carácter final pues . . . está sujeto a ser derrotado cuando, en un caso como el presente, se ha atacado la facultad del Gobierno para expropiar, poniéndose así en controversia la validez de la expropiación. El título no queda indefectiblemente adquirido por el Gobierno porque adopte el procedimiento auxiliar. Es necesaria a tal fin la sentencia final en el . . . pleito de expropiación.

*Iriarte Miró v. Srio. de Justicia*, 84 D.P.R. 171, 179 (1961).

En otras palabras, si el Estado presenta una declaración de adquisición y entrega material válida junto a su petición de expropiación, y la parte con interés la contesta impugnando el fin público o la justa compensación, el tribunal debe ordenar el traslado de dominio y entrega material provisionalmente. Ello no obstante, será necesario que continúe con la celebración del juicio y evalúe la evidencia que allí presenten las partes para que pueda entonces dictar una sentencia definitiva determinando los derechos de aquéllos. Es decir, será en la sentencia final en la cual resolverá si le asiste al Estado el derecho de expropiación y el monto de la justa compensación que deberá recibir la parte con interés, tal como lo ordena la Ley de Expropiación Forzosa. 32 L.P.R.A. sec. 2911. *Véase*, *The American Railroad Co. of P.R. v. Ortiz*, 16 D.P.R. 286, 301 (1910) ("Toda consideración de utilidad y conveniencia pública debe supeditarse al derecho del propietario a su propiedad, hasta que dicho derecho sea

suspendido o extinguido de estricto acuerdo con la ley del país.")

En cuanto a la referida evaluación que sobre la petición de expropiación forzosa debe realizar el juzgador, hemos sostenido que "[c]omo la facultad de expropiar es un atributo inherente a la soberanía del Estado, las únicas limitaciones que pueden reconocerse a su ejercicio son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella". *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, *supra*, págs. 15-16; *E.L.A. v. Sociedad Civil Agrícola e Industrial*, *supra*.

La Asamblea Legislativa tiene gran discreción para determinar lo que constituye un fin público para la expropiación, así como su utilidad y necesidad. *McCormick v. Marrero*, 64 D.P.R. 260, 267 (1944). *Véase*, *Kelo et al. v. City of New London*, 545 U.S. 469, 482-83 (2005); *O'Neill v. Leamer*, 239 U.S. 244, 253 (1915). Ello nos ha llevado a expresar que cuando la Legislatura declara el uso público de una expropiación antes de que el Estado presente su acción en el tribunal, existe una presunción de que el uso así declarado es en efecto un fin público según lo exige nuestra Constitución. *Estado v. Fajardo Sugar Co.*, *supra*, pág. 334; *McCormick v. Marrero*, *supra*. *Véase también* J.L. Sackman, *Nichols on Eminent Domain*, Matthew Bender, 3<sup>ra</sup> ed., Vol. 2A, Sec. 7.03[11][b]. Esta presunción, al menos, beneficia al Estado en cuanto sirve de fundamento para obtener el dominio provisional de los bienes mediante la

presentación de una declaración de adquisición y entrega material de la propiedad objeto de expropiación; mecanismo auxiliar que dispone la Ley de Expropiación Forzosa y el cual discutimos previamente.  32 L.P.R.A. sec. 2907.

Por otro lado, aunque los tribunales no estamos llamados a revisar la sabiduría o conveniencia de las declaraciones legislativas sobre el uso público, *McCormick v. Marrero*, *supra*, en última instancia, la determinación sobre si un uso en particular es público y legítimo, bajo el palio de nuestra Constitución, corresponde a la Rama Judicial.  *Estado v. Fajardo Sugar Co.*, *supra*.  *Véase* Sackman, *op. cit.*, Sec. 7.03[11][a].

Sobre la figura del uso público en nuestra jurisdicción, podemos afirmar que lejos de gozar de una definición clara y precisa, ésta se ha venido desarrollando paulatinamente a través de la jurisprudencia.  Igual ha sido el caso en la jurisdicción federal.  *Véanse*, *Kelo v. City of New London*, *supra*, pág. 483 ("For more than a century, our public use jurisprudence has wisely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power."); Errol E. Meidinger, *The "Public Uses" of Eminent Domain: History and Policy*, 11 Envtl. L. 1, 13 (1980).

En última instancia, la función judicial es velar porque la expropiación que interesa el Estado "cont[enga] elementos de beneficio público y el propósito que se trata de realizar [sea] de carácter público".  *McCormick v.*

*Marrero*, *supra*, pág. 267. *Véase además*, *Estado v. Fajardo Sugar Co.*, *supra*, pág. 328, nota 4 ("En Puerto Rico se ha seguido la doctrina liberal que acepta el significado del término 'uso público' como sinónimo de 'beneficio público'.") (Citas omitidas). Dicha finalidad podría ser alcanzada por las entidades gubernamentales aunque los beneficios que promueve la expropiación no aprovechen directamente a toda una comunidad, o ésta no reciba todo el beneficio. *Id.*, pág. 335.

Mas sin embargo, debemos recordar que una vez establecido que la expropiación requerida por el Estado en efecto tiene un fin público, "no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo adecuado del sitio en particular, porque ésta es una función que ejerce la [L]egislatura bien directamente o delegándola en agencias y funcionarios". *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, *supra*, pág. 16; *M. Mercado e Hijos v. Tribunal Superior*, *supra*. *Véanse además*, *Berman et al. v. Parker et al.*, 348 U.S. 26 (1954); T.M. Cooley, *Cooley's Constitutional Limitations*, 8$^{va}$ ed., Boston, Little, Brown & Co., 1927, Vol. 2, págs. 1143-47; A.D. Jahr, *Law of Eminent Domain: Valuation and Procedure*, Clark Boardman Co., 1957, pág. 355. En dichas circunstancias sólo podemos intervenir con el fin propuesto por el Estado si éste implica una imposibilidad o no existe vínculo racional alguno entre la declaración legislativa y el objeto perseguido. *Estado v.*

*Fajardo Sugar Co.*, *supra*, pág. 330; *E.L.A. v. Rosso*, 95 D.P.R. 501, 537 (1967). *En igual sentido véanse*, *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240-41 (1984); *United States ex rel. T.V.A. v. Welch*, 327 U.S. 546, 552 (1946); *Old Dominion Co. v. United States*, 269 U.S. 55, 66 (1925).

B.

Sobre las cargas que tienen las partes en los procedimientos de expropiación forzosa, hemos reiterado que cuando se objeta la compensación depositada por el Estado como justo precio, el dueño de la propiedad —aunque formalmente sea el demandado— pasa a ocupar la posición del demandante y tiene que probar su derecho a obtener una compensación mayor a la consignada. *A.C.T. v. 780,6141m$^2$*, *supra*, pág. 133; *Martínez Rivera v. Tribunal Superior*, 85 D.P.R. 1, 11 (1962); *Pueblo v. McCormick, Alcaide & Co.*, *supra*, pág. 952; *Pueblo v. 632 Metros Cuadrados de Terreno*, *supra*, pág. 976; *Canino v. Tribunal de Expropiaciones*, 70 D.P.R. 152, 153-54 (1949); *Pueblo v. Anadón*, 69 D.P.R. 822, 825 (1949). *Véanse también*, *United States ex rel. T.V.A. v. Powelson*, 319 U.S. 266, 273 (1943) ("The burden of establishing the value of the lands sought to be condemned was on respondent [(the proprietor)]."); *United States v. Toronto, Hamilton, & Buffalo Navigation Co.*, 338 U.S. 396, 406 (1949); *United States v. John J. Felin & Co., Inc.*, 334 U.S. 624, 631 (1948); *Marion & Rye Valley Railway Co. v. United States*, 270 U.S. 280, 285 (1926).

Sin embargo, respecto al uso público de la expropiación, no existe en la Ley de Expropiación Forzosa o nuestra jurisprudencia una norma clara sobre quién tiene la carga de probar su validez. La respuesta a dicha interrogante, como veremos, está implícita en la Constitución del Estado Libre Asociado y nuestros pronunciamientos previos sobre los procedimientos de expropiación forzosa.

Examinemos en primer lugar la discusión de varios delegados de la Convención Constituyente de Puerto Rico a propósito de una enmienda propuesta a la Sección 9 del Artículo II de la Constitución en torno al uso público de las expropiaciones forzosas:

> Srta. PRESIDENTA: Señor Secretario, al leer, como en este caso, sería bueno que al llegar a la enmienda hiciera un énfasis, de manera que los delegados pudieran saber cuál es la enmienda que se está [proponiendo].
> Sr. SECRETARIO: "No se tomará o perjudicará la propiedad privada por razón de uso público, a no ser mediante *declaración de necesidad y utilidad y* el pago de una justa compensación de acuerdo con la forma provista por ley." Eso es la enmienda.
> . . . .
> Sr. GARCÍA MÉNDEZ: . . . Voy a explicar el fundamento de mi enmienda. Señorita Presidenta y compañeros. El procedimiento en Puerto Rico actualmente conlleva dos pasos o requisitos; uno es el que sea necesaria la propiedad a ser tomada por el gobierno, de necesidad pública; y dos, que se pague una justa compensación. Dejar la sección como está, llevaría en la práctica, en la práctica conllevaría el resultado siguiente: Que se alegaría en la acción que sencillamente por razón pública, genéricamente, por razón pública, pero a un arbitrio prudente de la autoridad competente por razón pública se toma esta propiedad y se deposita la cantidad de tanto. La única enmienda que yo hago es, que quede claro que debe especificarse la declaración de utilidad y necesidad. En otras

palabras, si el compañero Dávila Díaz tiene una casa residencia en el barrio X de Manatí, y el gobierno entiende que esa casa es de utilidad y necesidad para fines públicos, lo dice así, deposita la cantidad de justa compensación y prosigue el caso. En la forma en que está, se elimina la declaración de utilidad y necesidad; que no quiere decir aquí que tenga que ser previa . . ..

**No, lo que debe es consignarse en la acción las razones "de utilidad y conveniencia públicas" y entonces depositar la "justa compensación." Pero si no se dice así, entonces por razón pública puede ser todo. Es un fíat que lo cubriría absolutamente todo, al arbitrio prudente en unos casos, sensato en otros casos, pero un poco arbitrario, podría ser en algunos otros.**

. . . .

Sr. GUTIÉRREZ FRANQUI: Señorita Presidenta. Mi única objeción a la enmienda es que la misma tiende a trastornar un lenguaje que ha sido objeto de innumerables decisiones judiciales e interpretado infinidad de veces, tanto por ser el lenguaje de la Constitución de los Estados Unidos en materia de expropiación, como por haber sido el lenguaje hasta ahora existente en la Carta Orgánica.

. . . .

No creo por un lado que debamos estar constantemente amarrados aquí a un lenguaje conocido y estricto; pero el lenguaje que tiene abundante y rica jurisprudencia de interpretación, no creo que debamos variarlo innecesariamente, **cuando a nuestro juicio el concepto que trata de incorporar el compañero está implícito en este lenguaje.**

Sr. GARCÍA MÉNDEZ: Señorita Presidenta.

Para ganar tiempo y no tomárselo a la Convención, ¿acepta el comité que trajo el informe, el punto de vista de que ésa es la interpretación de este precepto, sin mi enmienda?

Sr. BENÍTEZ: Aceptamos el punto de vista expresado por el señor Gutiérrez Franqui.

Sr. GARCÍA MÉNDEZ: O sea, ¿que está implícito que **habrá la declaración de necesidad y utilidad o de uso público,** de acuerdo con el sistema que se está usando a virtud de esos preceptos, tal como aparecen en la Constitución americana . . .? En ese caso, señorita Presidenta, siendo esto parte interpretativa del precepto, retiro mi enmienda.

Sr. REYES DELGADO: Señorita Presidenta.

Srta. PRESIDENTA: Señor Delgado.

Sr. REYES DELGADO: Yo quiero aclarar, para una pregunta al Presidente o al señor Procurador General, delegado Gutiérrez Franqui, que explicó esta situación. ¿Quiere eso decir que cada vez que se haya de tomar una propiedad, el tribunal pueda entrar a discutir si hubo justificación en la declaración de utilidad pública, aunque sea a *posteriori*? O es que la Asamblea Legislativa lo dirá en la ley o se tomará en cuenta la acción de la Asamblea Legislativa; porque tal como yo entiendo, el punto levantado por el compañero García Méndez, es que al expropiar se pueda entrar a discutir, aunque no sea previamente, si hubo justificación en la declaración de utilidad pública, o no.

Y yo entiendo que ésa no es la situación.

Que se deje claro en el acta hasta dónde puede llegarse en eso.

Sr. GUTIÉRREZ FRANQUI: La contestación a la pregunta del compañero, hasta donde yo la entiendo, y que es el estado de las decisiones que no queremos alterar mediante el uso de nuevo lenguaje, es, que la corte no puede ir más allá de determinar si el carácter o el uso a que se va a destinar la propiedad constituye un fin público; pero no puede entrar a cuestionar la declaración específica que haga el poder legislativo de que esa propiedad es para tal fin público.

Sr. QUIÑONEZ: Una pregunta al compañero Gutiérrez Franqui. Pregunto yo, ¿y tampoco podría entrar la corte en la motivación del poder legislativo al hacer ese decreto?

Sr. GUTIÉRREZ FRANQUI: Únicamente en el carácter de fin público, del propósito para el cual se expropia. Y no hemos querido, no, alterar el *stare decisis*, la situación de jurisprudencia que existe en este momento.

Sr. DÁVILA DÍAZ: Señor Gutiérrez Franqui, de modo que el gobierno necesita cierta cantidad de terreno en tal o cual parte del país; tal y como está la situación hoy, la ley declara de necesidad y utilidad pública ese terreno; deposita la cantidad, el valor que él cree justo por ese terreno, en la corte; y toma posesión de la propiedad, ¿no es eso?

Sr. GUTIÉRREZ FRANQUI: Toma posesión y título.

Sr. DÁVILA DÍAZ: Y título. **¿Pero entonces el dueño no tiene ningún derecho a recurrir a una corte para que el gobierno le pruebe que no es caprichosa esa decisión?**

Sr. GUTIÉRREZ FRANQUI: **Sí, señor. Ese derecho existe, subsiste en su integridad.**

Sr. DÁVILA DÍAZ: **¿Existe hoy?**

Sr. GUTIÉRREZ FRANQUI: **Existe hoy y subsistirá**
**después de la aprobación de esta [C]onstitución.**
Sr. DÁVILA DÍAZ:    Muy bien.

3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, págs. 1552-54 (1961) (Énfasis suplido).

El debate antes citado se produjo luego de que el delegado Miguel A. García Méndez propusiera su enmienda. Ésta buscaba limitar posibles abusos del poder de expropiación y actos arbitrarios por parte del Estado asegurando que éste siempre tuviera que expresar el uso público al cual destinaría la propiedad expropiada. De manera que señalar, en una acción de expropiación, que se trata de un fin público en general no sería suficiente. Dicha enmienda fue retirada debido a que los delegados concluyeron que el lenguaje original de la Constitución implícitamente contiene el requerimiento que la enmienda pretendía adicionar.

Más adelante en el desarrollo de la discusión en torno al fin público, y ante la preocupación del delegado Juan Dávila Díaz respecto a que el Estado pudiera expropiar bienes con la mera declaración legislativa de utilidad pública y la consignación de la justa compensación en el tribunal, el delegado Victor Gutiérrez Franqui aclaró que **al ciudadano le asiste —tanto antes como después de la aprobación de la Constitución— el derecho a impugnar ante los tribunales la expropiación que interesa el Estado.** Asimismo, el intercambio de palabras entre estos dos delegados sobre el **"derecho [del sujeto afectado por la**

**expropiación] a recurrir a una corte para que el gobierno le
pruebe que no es caprichosa esa decisión", evidencia que los
miembros de la Convención Constituyente reconocían que el
Estado tiene el deber de establecer el uso público de la
expropiación cuando los ciudadanos objetan en los tribunales
dicho uso.**

Ante tales expresiones, las cuales arrojan luz sobre la
cláusula constitucional que examinamos, debemos concluir que
la entidad que insta la petición de expropiación forzosa
tiene el peso de establecer que expropiación propuesta
responde a un fin público. V*éase* Sackman, *op. cit.*, Vol. 5,
Sec. 18.02[2][b] ("The burden of proof on the right to take
in *de jure* or direct condemnation cases is normally on the
condemnor."), Sec. 18.04 ("The burden of proving a public
purpose and a necessity for the taking initially rests on
the condemning authority.  Upon the presentation of
supporting evidence, the burden shifts to the condemnee to
prove illegality . . ..").

Un examen cuidadoso de nuestra jurisprudencia
demuestra que la determinación que hoy enunciamos con
claridad yacía implícita en pronunciamientos anteriores de
este Tribunal.

En *Pueblo v. García*, 66 D.P.R. 504 (1946), —un caso en
el que los demandados impugnaban la compensación que
obtendrían por los bienes expropiados, mas no el uso
público de la expropiación— resolvimos que cuando el dueño
de una propiedad objeto de expropiación se opone a ésta por

estar inconforme con la compensación que el Estado le ofrece, es dicho demandado quien tiene que probar su derecho a obtener una suma mayor. Por ello decimos que el demandado se convierte en demandante. En aquel entonces expresamos que esta regla responde a que la controversia entre las partes es simplemente si la suma depositada por el Estado debe ser superior.

Ahora bien, con su adopción también aclaramos que la regla era de aplicación a casos de expropiación en los cuales "la única cuestión en controversia es el montante de la cantidad que deba pagarse al dueño". *Id.*, pág. 508. Conforme a ello, sólo hemos invertido el peso de la prueba para ponerlo sobre el demandado en casos de expropiación forzosa cuando éste impugna la justa compensación. *Véanse*, *Martínez Rivera v. Tribunal Superior*, *supra*; *Pueblo v. McCormick, Alcaide & Co.*, *supra*; *Pueblo v. 632 Metros Cuadrados de Terreno*, *supra*, pág. 976 ("cuando la cuestión en controversia en un caso de expropiación es el importe de la compensación, los casos resuelven que (1) el demandado es en efecto el demandante; (2) éste debe presentar su evidencia en primer lugar; y (3) tiene el peso de la prueba en cuanto a valoración"); *Canino v. Tribunal de Expropiaciones*, *supra*, págs. 153-54 ("a los efectos de la valoración de una propiedad expropiada, el demandado se convierte en demandante y la contienda queda trabada cuando el demandado alega que no está conforme con la cantidad depositada por el El Pueblo"); *Pueblo v. Anadón*, *supra*.

El desarrollo de la norma antes descrita sirve de apoyo a nuestra determinación: en cuanto al fin público de una expropiación forzosa, el Estado sigue siendo el demandante en la acción que promueve y tiene la carga de establecer dicho fin público. No hay razón para invertir la posición de las partes mientras se examina dicho asunto. De manera que aunque al Estado le favorece una presunción *prima facie* de uso público cuando la Legislatura ha declarado previamente tal finalidad, ello no lo releva de tener que establecer en el tribunal el fin público de la expropiación que interesa. *Véase* Sackman, *op. cit.*, Vol. 7A, Sec. G9A.03[4] ("Often, the condemnor benefits from a *prima facie* presumption that property condemned is taken for public use. Nonetheless, the condemnor has the burden of proving the public use to be made of the property."). Cuestionado el fin público por la parte afectada en la expropiación corresponde al Estado establecerlo.

Empero, debemos señalar que la norma que hoy enunciamos no supone la celebración de vistas evidenciarias en todo proceso de expropiación forzosa. Nos explicamos, si la entidad gubernamental que interesa obtener la propiedad de los predios de los demandados incluye en su petición de expropiación una declaración adecuada del fin público al que destinará la propiedad que pretende adquirir y la parte afectada no la cuestiona, la entidad gubernamental habrá satisfecho la carga de establecer el uso público de la expropiación. Si por el contrario, la parte afectada impugna el fin público declarado, recae sobre el ente

gubernamental probarlo. Para cumplir con el *onus* requerido la parte expropiante muy bien puede: descansar en los documentos que presentó al tribunal como indicativos del fin público para el cual se expropia, o presentar ante el foro primario aquella evidencia adicional que éste estime sustente el uso público del terreno expropiado. Corresponderá al foro de primera instancia determinar si celebra una vista evidenciara o argumentativa para dilucidar el asunto o si ello es innecesario, pero siempre teniendo presente que el peso de la prueba de demostrar el uso público recae en la autoridad gubernamental.

En otras palabras, el fin público puede ser satisfecho mediante alegaciones específicas y bien hechas sobre la finalidad de la expropiación con la documentación e información que así lo evidencie, aunque en otras ocasiones, podría requerirse la celebración de vistas evidenciarias para desfilar prueba a esos fines. *Véase* A.D. Jahr, *op. cit.*, págs. 356-57 ("The condemnor must then prove that he possesses the power of eminent domain, [and] the public use . . .. Where, however, the defendant pleads an affirmative defense, the burden of proving the defense rests with the defendant.").

Adoptar una posición contraria a ésta sería desvirtuar los límites que impone sobre el Estado la Sección 9 del Artículo II de nuestra Carta de Derechos, *supra*; precisamente lo que los delegados de la Convención Constituyente querían evitar. Al exigir que el gobierno establezca el uso público de la expropiación en los

tribunales, nuestros ciudadanos obtienen la seguridad de que sus bienes se enajenan, no por motivaciones arbitrarias o caprichosas de funcionarios públicos, sino en pos de alcanzar el mejor bienestar común. Recordemos que se trata de la intervención gubernamental con el derecho fundamental al disfrute de la propiedad privada, el cual no debe ser destruido livianamente. *Cf.*, *Cincinnati v. Vester*, 281 U.S. 439, 447 (1930) ("Otherwise, the taking of any land . . . would be sustained on a bare recital.  This would be to treat the constitutional provision as giving such a sweeping authority to municipalities as to make nugatory the express condition upon which the authority is granted.")

C.

De otra parte, la Ley de Expropiación Forzosa, *supra*, no dispone qué documentos tienen que ser presentados ante el tribunal por la entidad que interesa realizar la expropiación.  Tampoco dispone que sea necesario concretar procedimientos administrativos ante otros foros previo a la presentación de la acción en el foro judicial.  La Regla 58 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 58, también era silente al respecto.

Sin embargo, la Regla 58.3(c) de las nuevas Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 58.3(c), sí requiere que junto a la demanda de expropiación se presente un legajo con varios documentos.  Éstos son: un *exhibit* que contenga ciertos datos de la propiedad; una certificación expedida por el Registro de la Propiedad; una consulta de ubicación; un plano de mensura; un informe de

valoración; una declaración para la adquisición y entrega material de la propiedad; y un proyecto de resolución. *Id.*

Por otro lado, la Orden Ejecutiva Núm. 4 del 20 de enero de 2004 ordena que las agencias gubernamentales posean ciertos documentos antes de adquirir una propiedad inmueble, incluso si la obtienen mediante expropiación forzosa. Boletín Administrativo Núm. OE-2004-4.[5] Entre otros, la orden ejecutiva requiere que las agencias posean una "copia certificada de la Consulta de Uso y Ubicación emitida por la Junta de Planificación". *Id.*

El origen de la referida orden se remonta a la Orden Ejecutiva del 26 de febrero de 1987, Boletín Administrativo Núm. 4874A. En aquel entonces la orden aplicaba a todas las instrumentalidades del Estado, a saber: "departamentos", "agencias", "corporaciones públicas", y "municipios". Esta aplicación permaneció inalterada luego de la promulgación de la Orden Ejecutiva Núm. 69 del 11 de octubre de 1991, Boletín Administrativo Núm. OE-1991-69, la cual enmendó la orden original. No obstante, estas dos órdenes se derogaron por la Orden Ejecutiva Núm. 29 del 30 de junio de 2001, Boletín Administrativo Núm. OE-2001-29. Con esta última orden ejecutiva no sólo se establecieron nuevas normas para

---

[5] "Orden Ejecutiva de la Gobernadora del Estado Libre Asociado de Puerto Rico para revisar las guías y procedimientos aplicables a todos los Organismos de la Rama Ejecutiva en la preparación de informes de valoración y estudios de mercado para la adquisición y arrendamiento de bienes inmuebles a ser dedicados para fines públicos, a fin de aclarar el alcance de su aplicación y modificar varias de sus disposiciones; y para derogar la Orden Ejecutiva Núm. 29 del 30 de junio de 2001"; enmendada por la Orden Ejecutiva Núm. 54 del 14 de noviembre de 2007, Boletín Administrativo Núm. OE-2007-54.

regular la adquisición de bienes inmuebles por el gobierno, sino que se dispuso que la orden sería "de aplicación exclusiva" a las *agencias*, definidas como: "todas las instrumentalidades y agencias de la Rama Ejecutiva, sus subdivisiones, y las corporaciones públicas". *Id*. Finalmente, la Orden Ejecutiva Núm. 4 del 20 de enero de 2004, *supra*, —vigente cuando se suscitaron los hechos de *autos* por haber derogado a la anterior— mantuvo el mismo lenguaje sobre su aplicación.

Luego de evaluar las normas discutidas hasta aquí, pasemos a examinar las determinaciones de los tribunales recurridos.

### III.

Tanto en el recurso CC-2009-16, como en el recurso CC-2009-25, —tras el foro primario concluir que las expropiaciones en controversia promueven un fin público— el Tribunal de Apelaciones revocó las resoluciones recurridas y determinó que el Municipio Autónomo de Guaynabo tiene que establecer la validez, necesidad y viabilidad del uso público alegado en una vista evidenciaria. El foro apelativo intermedio también concluyó, en el recurso CC-2009-16, que parte de la evidencia que el Municipio tiene que presentar en la vista sobre el uso público ante el Tribunal de Primera Instancia es una consulta de transacción pública aprobada por la Junta de Planificación. Su decisión estuvo fundamentada en la Orden Ejecutiva Núm. 4 del 20 de enero de 2004, *supra*, y el Reglamento de

Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244 de 21 de marzo de 1995. Atendamos cada uno de estos asuntos en orden.

Primeramente, sobre la carga del Municipio en cuanto a establecer el fin público de la expropiación, concluimos que no erró el Tribunal de Apelaciones. A tenor de la norma discutida previamente, corresponde a la entidad que promueve la acción de expropiación forzosa, en este caso el Municipio, establecer el uso público de la misma. Así logramos imprimir vitalidad a la limitación constitucional que impone sobre el Estado la Sección 9 de nuestra Carta de Derechos, según fue concebida por los delegados de la Convención Constituyente.

No obstante, al aplicar los principios esbozados anteriormente al caso de *autos* debemos revocar las sentencias recurridas. Consideramos que el foro apelativo intermedio erró en tanto concluyó que era necesaria una vista evidenciaria para que el Municipio estableciera dicho fin público. Como vimos, el Estado puede cumplir con dicha responsabilidad a través de los documentos que presenta ante el tribunal, ya sea inicialmente para instar su acción, o posteriormente para sustentarla.

Así, un examen cuidadoso del expediente revela que el Municipio —luego de haberse presentado la impugnación al uso público inicialmente alegado— brindó al Tribunal de Primera Instancia datos suficientes sobre el propósito de la expropiación como para que el foro primario pudiera

concluir que había quedado establecido el fin público de la acción. En efecto, el Tribunal de Primera Instancia denegó las mociones que impugnaban el fin público de la expropiación porque entendió probado el mismo.

Según vimos, el Municipio explicó que el proyecto "Villas de Mainé" serán residencias de interés social. Éste forma parte de un plan de desarrollo y renovación urbana que aumentará la disponibilidad de viviendas seguras y accesibles para familias de escasos recursos económicos. Semejante propuesta, sin duda, no sólo constituye un uso legítimo bajo nuestra Constitución puesto que adelanta un beneficio público, sino que es afín con otras previamente avaladas por esta Curia. *Véase*, *McCormick v. Marrero*, *supra*, pág. 267 ("Es deber de todo gobierno, adoptar aquellas medidas que fueren necesarias para promover el bienestar y defender la salud de todos los ciudadanos, especialmente de aquellos a quienes sus escasos medios de fortuna no les permiten adquirir un pedazo de tierra para edificar en ella sus hogares."). *Véase además* Sackman, *op. cit.*, Sec. 7.06[22][a].

El referido uso público no fue derrotado por las alegaciones de los demandados. Éstos trataron de impugnarlo atacando la constitucionalidad del Manual de Subsidios de Vivienda que alegadamente utilizaría el Municipio para escoger los beneficiarios del proyecto. Sin embargo, tal evaluación es ajena al proceso de expropiación forzosa. Hoy sólo tenemos que analizar si la expropiación que interesa el Estado está motivada por un fin público.

Si eventualmente, habiendo obtenido el Municipio la titularidad de los predios, algunas personas estiman que éste lleva a cabo el proyecto "Villas de Mainé" implantando reglas que contravienen nuestra Constitución, entonces ellos podrán instar las acciones que entiendan adecuadas a fin de cuestionar tal proceder. De manera que pasar juicio sobre la validez del referido Manual en el presente caso sería un ejercicio, cuando menos, a destiempo.

De otra parte, debido a que los tribunales no son el foro para dilucidar la necesidad o viabilidad de las expropiaciones que propone el Estado, *M. Mercado e Hijos v. Tribunal Superior*, *supra*, pues estamos limitados a evaluar la existencia del uso público y la justa compensación, *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, *supra*, también debemos revocar las sentencias recurridas ya que exigen que el Municipio pruebe la *necesidad y viabilidad* de la petición de expropiación forzosa ante el foro primario. Los propietarios recurridos, sin embargo, mantienen su derecho a levantar como defensa la imposibilidad de lograr el uso propuesto por el demandante, así como la falta de nexo racional entre dicho uso y la declaración legislativa pertinente. *Estado v. Fajardo Sugar Co.*, *supra*; *E.L.A. v. Rosso*, *supra*.

En tercer lugar, resolvemos que el Municipio no está obligado a presentar en los casos recurridos una consulta de transacción pública aprobada por la Junta de Planificación. La exigencia que impusiera el Tribunal de

Apelaciones referente a la presentación de dicha consulta no encuentra apoyo en nuestro ordenamiento.

Como vimos antes, independientemente de que la Orden Ejecutiva Núm. 4 del 20 de enero de 2004, *supra*, sea o no de aplicación a los municipios —asunto que no atendemos en la presente Opinión— aquélla ordena que la entidad gubernamental que va a adquirir una propiedad inmueble mediante expropiación forzosa posea una "consulta de uso y ubicación", no una consulta de transacción pública como la que solicitan los recurridos.[6]

A su vez, debemos aclarar que aunque el Tribunal de Apelaciones también tomó en consideración el Reglamento Núm. 5244 de Procedimientos Adjudicativos de la Junta de Planificación, *supra*, para ordenar la presentación de la referida consulta, dicho Reglamento había sido derogado por el Reglamento Núm. 6031 del 12 de noviembre de 1999. Dejando ello a un lado, basta decir que este Reglamento crea procedimientos administrativos ante la Junta de Planificación que son ajenos al proceso judicial de expropiación forzosa. Nada de lo dispuesto en el referido

_____

[6] La consulta de transacción pública es una consulta diferente a la consulta de ubicación. Éstas son dos de las tres consultas que se pueden presentar en la Junta de Planificación. *Véanse* Reglamento Núm. 6031 de Procedimientos Adjudicativos de la Junta de Planificación, Sec. 2.00 (6) ("Consulta– Comprende toda solicitud para ubicación, transacción o especial.") & Sec. 3.02 ("Tipos de Consultas a Radicarse en la Junta: 1. **Consultas de Ubicación** Públicas y Privadas, 2. Consultas Especiales Públicas, 3. **Consultas sobre Transacciones Públicas.**") (Énfasis suplido); Reglamento Núm. 7512 de Procedimientos Adjudicativos de la Junta de Planificación.

Reglamento trata sobre adquisiciones de bienes inmuebles a través del poder inherente de expropiación.

IV.

Por todo ello, procede revocar las sentencias del Tribunal de Apelaciones. Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García
        Peticionarios

                v.

Adquisición de 197.8817 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a Andeli González, John Doe y Richard Doe
        Recurridos

Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García
        Peticionario

                v.

Adquisición de 468.7202 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a Milagros Cruz Gotay, John Doe y Richard Doe
        Recurrida

Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García
        Peticionario

                v.

Adquisición de 160.3609 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a José Cruz Gotay, John Doe y Richard Doe
        Recurrida

Municipio Autónomo de Guaynabo representado por su Honorable Alcalde, Héctor O´Neill García
        Peticionario

CC-2009-16

Cons.

CC-2009-16 cons. CC-2009-25
          v.
Adquisición de 2,595.1893 metros cuadrados de terreno radicados en la Bda. Mainé, Barrio Los Frailes, Guaynabo, PR, perteneciente a Rafael Oliveras Ramos, Ana Molina, First Bank Puerto Rico, Citibank, N.A., John Doe y Richard Doe
          Recurrida

SENTENCIA

San Juan, Puerto Rico, a 2 de diciembre de 2010

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia revocando los dictámenes del Tribunal de Apelaciones. Se devuelven los casos de epígrafe al foro primario para que continúen los procedimientos conforme lo dispuesto en la Opinión del Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. El Juez Asociado señor Rivera García concurre en el resultado sin opinión escrita. La Jueza Asociada señora Fiol Matta disiente sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino. La Jueza Asociada señora Pabón Charneco no interviene.


                    Larissa Ortiz Modestti
              Secretaria del Tribunal Supremo, Interina